JOSEPH HARRAKA *vs.* BOARD OF REVIEW OF DEPARTMENT OF EMPLOYMENT SECURITY.

MAY 20, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

198

ROBERTS, J. This petition was brought in the superior court pursuant to G. L. 1956, §28-44-52, to obtain a judicial review of a decision of the board of review of the department of employment security. After hearing thereon the superior court affirmed the decision wherein the board sustained a denial by the director of the department of the petitioner's claim for unemployment benefits under the terms of the employment security act. A decree was entered by that court denying and dismissing the petition, and the petitioner has prosecuted his appeal therefrom to this court under §28-44-55.

The record discloses that petitioner, then twenty-three years of age and unmarried, immediately after his discharge from the armed forces sought and obtained employment in

the chemical industry, the duties of which required him to work directly with chemical substances. It appears that he continued in this employment for about one week, leaving it on February 22, 1963 and filing an application for compensation as an ex-serviceman on February 25, 1963.

The facts material to the issue are not in dispute. The petitioner testified that the chemicals with which he worked impregnated his clothing and caused his skin to turn yellow; that this discoloration persisted after bathing; that his bedding became discolored after use by him; and that the inclusion of his work clothes in the family laundry caused other garments included therein to become discolored. From an investigation of the claim of petitioner, it appears that the employer conceded that the chemicals used in his employment would impregnate the worker's clothing, and that it provided shower baths for its employees for the purpose of preventing discoloration of the skin, the use of these baths being permitted at the close of his working hours but on company time.

The petitioner conceded that such shower baths were available but that he made no use of them, being concerned that going outdoors in cold weather after bathing might have adverse effects upon his health. It is not disputed that petitioner discussed these matters with his foreman and asked whether he could be assigned to other work. He was advised that such was not available and then offered to continue in his employment until a replacement could be hired. Upon being advised that this was not necessary, he terminated his employment.

In denying petitioner's appeal, the board of review adopted the findings of fact and the conclusions of law of its referee and on the basis thereof sustained the decision of the director. The findings of fact are, in substance, summarized above, while the conclusions of law, in pertinent part, read: "It would appear that claimant's one week trial of the job

was not sufficient to determine whether or not it would have been suitable for him if he had given it a longer period of trial. While claimant had personal reasons for leaving the work, yet these reasons were not of a compelling nature; and it must be concluded, therefore, that claimant's separation was not with good cause under the provisions of the Employment Security Act." The only question before us then is whether the board erred in holding that in the stated circumstances petitioner's termination of his employment was as a matter of law voluntary and without good cause and deprived him of eligibility for compensation under the statute.

Section 28-44-17 provides in part that "an individual who leaves work voluntarily without good cause shall be ineligible for waiting period credit or benefits * * *." The extent to which this limits eligibility for benefits is to be determined in the light of the expressed legislative policy that "Chapters 42 to 44, inclusive, of this title shall be construed liberally in aid of their declared purpose which declared purpose is to lighten the burden which now falls on the unemployed worker and his family." G. L. 1956, §28-42-73. The legislature having thus declared a policy of liberal construction, this court, in construing the act, must seek to give as broad an effect to its humanitarian purpose as it reasonably may in the circumstances. Of course, compliance with the legislative policy does not warrant an extension of eligibility by this court to any person or class of persons not intended by the legislature to share in the benefits of the act; but neither does it permit this court to enlarge the exclusionary effect of expressed restrictions on eligibility under the guise of construing such provisions of the act.

There is no question, in our opinion, but that the legislature intended this statute to be applied broadly to relieve economic distress resulting from unemployment. It was in-

tended to alleviate distress resulting from any unemployment not caused by the employee leaving his work "voluntarily without good cause." It is our further opinion that eligibility for benefit payments was not to be forfeited because the termination of the employment was voluntary but only that, being voluntary, it was without good cause.

An examination of the conclusions of law adopted by the board discloses that it views the pertinent provision of the statute as requiring more than a mere showing of "good cause" for the termination of employment, the clear implication thereof being that the reason for such termination must be of a "compelling nature." This construction of the statute does violence to the legislative direction that it be liberally construed. To view the statutory language as requiring an employee to establish that he terminated his employment under compulsion is to make any voluntary termination thereof work a forfeiture of his eligibility for benefits under the act. This, in our opinion, amounts to reading into the statute a provision that the legislature did not contemplate at the time of its enactment.

In excluding from eligibility for benefit payments those who voluntarily terminate their employment without good cause, the legislature intended in the public interest to secure the fund from which the payments are made against depletion by payment of benefits to the shirker, the indolent, or the malingerer. However, the same public interest demands of this court an interpretation sufficiently liberal to permit the benefits of the act to be made available to employees who in good faith voluntarily leave their employment because the conditions thereof are such that continued exposure thereto would cause or aggravate nervous reactions or otherwise produce psychological trauma.

It would be difficult to argue that one afflicted with necrophobia would not have good cause to terminate employment as a morgue attendant; that one afflicted with acro-

phobia would not have good cause to terminate employment requiring him to work in high places; or that claustrophobia would not constitute good cause to terminate employment requiring work in enclosed places. It is conceivable that a fastidious person of great sensitivity would be justified in terminating employment requiring him to perform obnoxious or degrading tasks in public places. It is our opinion that given any one of these situations, a person so afflicted, when acting in good faith, could terminate such employment within the meaning of the statutory phrase "good cause."

We incline toward giving the statute such broad application because, in our opinion, the taking of a contrary view would be to frustrate the statutory declaration that it is to be liberally construed. The requirement of liberal construction may at times make it difficult to distinguish between a claim that is legitimate and that which is without merit, but this does not warrant evasions of the legislative direction. In the past, when considering the requirement of this statute for liberal construction, we have sought to apply what, in effect, might be described as a rule of reason.

Where the situation is such that reasonable men could agree that under a liberal application of some provision of the act a particular result would be proper, we have so held. In *Studley* v. *Board of Review of Department of Employment Security*, 88 R. I. 298, we held that, construed liberally, the provisions of §28-42-14 of the act excluding seasonal workers from its benefits were without application to the employees of the school lunch system who are employed some eight or nine months annually. In *Whitelaw* v. *Board of Review of the Department of Employment Security*, 95 R. I. 154, 185 A.2d 104, we declined to extend the concept of good cause on the basis of liberal construction to a situation wherein an employee terminated his employment because he would not perform a certain duty that the board

found as a fact was included within the scope of his employment. In *Chaharyn* v. *Department of Employment Security*, 85 R. I. 75, we again refused to extend the doctrine of liberal construction to a situation wherein the claimant for benefits sought to impose limitations upon his availability for employments other than those specified in the act.

There is evidence here susceptible of a reasonable inference that petitioner entered this employment in good faith and that the impregnation of work clothes and discoloration of the skin are natural and probable consequences thereof. There is also evidence tending to establish the availability of means for preventing in some degree these consequences but none tending to prove that exposure will not cause such deleterious results whatever precautions are taken. Clearly, the record contains no evidence from which it reasonably could be found that the consequences of the work of which petitioner complains were a result of any wilful or negligent failure on his part to take adequate precautions for the prevention thereof. It is then our opinion that in the circumstances of this case petitioner was justified in terminating his employment when he became aware of the consequences of the exposure to chemicals involved therein. In short, he has shown a fact situation which, as a matter of law, constitutes, in our opinion, good cause for leaving such employment. Hence it was error for the superior court to deny petitioner's appeal from the order denying him benefits under the act.

We do not perceive that the decision in *Fannon* v. *Federal Cartridge Corp.*, 219 Minn. 306, makes untenable the position we take in the instant case. That case stands primarily for the proposition that when an employee is compelled by illness to terminate employment which, if continued, would aggravate such illness or cause further deterioration of her health, such termination would be construed

as involuntary under the pertinent statute. However, it does not follow that impairment of health arising out of continuing in a particular employment alone constitutes "good cause" for terminating employment within the contemplation of our statute. We do not view our statute as so restricting the meaning of the term "good cause" set out therein.

The appeal of the petitioner is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for entry of a new decree in accordance with this opinion.

*Moses Kando*, for petitioner.

*Harvey S. Reynolds*, for respondent.