Edward POWELL

v.

DEPARTMENT OF EMPLOYMENT SECURITY, BOARD OF REVIEW.

No. 81–610–M.P.

Supreme Court of Rhode Island.

June 20, 1984.

Paul M. Giacobbe, Warwick, for plaintiff.

Joseph R. DeCiantis, Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is a petition for certiorari filed pursuant to the Administrative Procedures Act, G.L.1956 (1977 Reenactment) § 42–35–16, to review a decision of the District Court that affirmed the decision of the Rhode Island Department of Employment Security's Board of Review to deny unemployment benefits to the petitioner, Edward Powell. After a review of the record, we reverse.

The petitioner was employed by the United Way of Southeastern New England as director of communications. His duties included the preparation and subsequent release to the media of information concern- ing the activities of the United Way. On June 18, 1979, petitioner resigned his position in a dispute with a superior concerning the preparation of a particular news release. The petitioner's request for unemployment compensation was denied by the director of employment security. The petitioner appealed therefrom, and his case was heard by a referee of the Board of Review of the Department of Employment Security, who denied petitioner benefits in a decision dated September 11, 1979. On appeal, the board of review affirmed this decision.[1]

A review of the record reveals the following facts. In early June 1979, petitioner met with William Humphrey Jones to discuss the preparation of a news release detailing Jones's recent appointment to the paid staff position of director of the United Way's Endowments-Deferred Giving Program. Both men agreed to the preparation of a release discussing the appointment as well as the purpose and goals of the program.

Subsequent to this meeting, Jones informed petitioner that he was concerned that the release would upstage the appointment of Clarke E. Symonds to the volunteer position of chairman of the Endowments-Deferred Giving Program. Jones was apparently concerned that his appointment not overshadow the contributions of volunteers to the United Way. The petitioner told Jones that he could not prepare a release discussing Symonds's appointment because Symonds had already held the post for approximately five to seven months, and thus the appointment was no longer newsworthy.[2]

---

1. The referee's decision was affirmed by only two members of the board; a third member dissented.

2. At the first two hearings before the board of review, petitioner testified that although Mr. Symonds's appointment was known within the United Way organization and his picture had appeared on an organizational chart in the United Way office, the United Way had not released news of his appointment prior to June 18, 1979.

However, at the April 15, 1980 hearing before the board of review, petitioner introduced a United Way newsletter entitled "Update for Corporate Executives." The newsletter, dated May 1979, announced the appointment of W. Humphrey Jones as director of the Deferred Giving Program. It also mentioned Clarke Symonds's role as chairman of the Standing Committee on Endowment Funds, Bequests, and Special or Deferred Giving.

On June 18, 1979, petitioner attended a staff meeting with Leo Cornelius, executive director of the United Way. Cornelius told petitioner that he agreed with Jones and that petitioner should prepare a release announcing Symonds's appointment. The petitioner explained that he could not prepare such a release. He stated that a five to six month-old appointment was not *news* and that to prepare a release making the appointment appear recent would be both dishonest and ruinous of his credibility with the press. The petitioner emphasized that if the media later learned of this dishonesty, his effectiveness in the field of public relations would be irreparably harmed. Despite petitioner's protestations, Cornelius insisted that he prepare a release on Symonds. At the end of this heated half-hour disagreement, petitioner informed Cornelius that he had no alternative but to resign. Immediately thereafter, petitioner submitted a letter of resignation which stated:

> "This is to confirm my decision to resign immediately as director of the Department of Communications. My chief reason for resigning is that it is obvious that I no longer enjoy your confidence and support. Without it, I am wasting your time and mine.
>
> "Good luck."

At hearings before the board of review, petitioner presented three witnesses. Robert Newbert, a member of a Providence public relations firm, stated that a release announcing an appointment without mentioning the date of appointment is tantamount to an announcement that it was made that day. He said that he would not have prepared the requested release because to have done so would have undermined his credibility with the media.

Norman Medrich, an editor for the Journal-Bulletin for forty-five years until his retirement seven years prior to his giving testimony, also testified for petitioner and was qualified as an expert in the field of newspaper work. Medrich testified that if he, as a news editor, had seen the release and subsequently learned that the appointment was five to six months old, he would be very skeptical of United Way news releases in the future, which would make it more difficult for the organization to get their releases into the paper.

The final witness was Shirley Goff, director of public and community relations for the Girl Scouts of Rhode Island, and petitioner's employer after his resignation from the United Way. She stated that a prime factor in her hiring petitioner was his high standard of professional ethics. She further testified that the Girl Scouts of Rhode Island would not have hired petitioner if he had not had a good relationship with the media or if he had sent out a press release containing false or misleading information.

Thus, the only question on appeal is whether petitioner had good cause to leave his job. The petitioner argues that he left his work with good cause within the meaning of G.L. 1956 (1979 Reenactment) § 28–44–17 and he is therefore entitled to unemployment compensation.

■ Our review of cases arising under the Administrative Procedures Act is limited by § 42–35–16. *Berberian v. Department of Employment Security, Board of Review*, 414 A.2d 480, 482 (R.I.1980); *Providence Journal Co. v. Mason*, 116 R.I. 614, 620, 359 A.2d 682, 685 (1976). We may only address questions of law and are limited to a review of the record before us. *Ranone v. Department of Employment Security, Board of Review*, 474 A.2d 748, at 750 n. 5 (R.I.1984). On certiorari, this court does not weigh the evidence but merely searches for any legally competent evidence to support the decision of the board of review. *Prospecting Unlimited, Inc. v. Norberg*, 119 R.I. 116, 123, 376 A.2d 702, 706 (1977). Moreover, like the District Court, we must make our review conform to the standards contained in § 42–35–15. *Berberian v. Department of Employment Security, Board of Review*, 414 A.2d at 482 n. 2. Section 42–35–15(g) provides:

"The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

■ It is clear that "eligibility for benefit payments [is] not to be forfeited because the termination of the employment was voluntary but only that, being voluntary, it was without good cause." *Harraka v. Board of Review of Department of Employment Security*, 98 R.I. 197, 201, 200 A.2d 595, 597 (1964). *See also*, § 28–44–17. The question of whether an employee had good cause to leave his or her job is, in the first instance, a question of fact. *Whitelaw v. Board of Review of the Department of Employment Security*, 95 R.I. 154, 157, 185 A.2d 104, 105 (1962). On review, however, "the determination of what circumstances will constitute good cause [is] a question of law to be resolved by this court." *Murphy v. Fascio*, 115 R.I. 33, 36, 340 A.2d 137, 139 (1975).

The Legislature, in enacting the Employment Security Act, expressed a policy of liberal construction for the declared purpose of the act, that is, to lighten the burden on the unemployed worker and his or her family. Section 28–42–73. This court has complied with this mandate of broad, liberal construction; a review of prior case law indicates, however, that we have given apparently conflicting definitions to the phrase "good cause."

In *Harraka v. Board of Review of Department of Employment Security*, 98 R.I. 197, 200 A.2d 595 (1964), this court determined that an employee who quit his job in a chemical company after discovering that he had a particular sensitivity to the chemicals had good cause to terminate his employment. In arriving at this conclusion, we rejected an interpretation of good cause that would require an element of "compulsion." We stated that "[t]o view the statutory language as requiring an employee to establish that he terminated his employment under compulsion is to make any voluntary termination thereof work a forfeiture of his eligibility for benefits under the act." *Id.* at 201, 200 A.2d at 597.

■ However, in *Murphy v. Fascio*, 115 R.I. at 37, 340 A.2d at 139, we determined that an employee who left her job to marry and move to another state to be with her husband did not have good cause to voluntarily terminate her employment within the meaning of § 28–44–17. We determined that the act "was intended to protect individuals from the hardships of unemployment the advent of which involves a substantial degree of compulsion." *Id.* In *Murphy*, we merely rejected the plaintiff's claim that her marriage and subsequent move to another state constituted good cause.[3] Her job termination was purely voluntary and not due to circumstances beyond her control. Under § 28–44–17, in determining what circumstances constitute good cause, the focus need not be on the degree of compulsion involved. Rather, "[t]hat statute indicates that unemployment benefits were intended to alleviate the economic insecurity arising from termination of employment the prevention of which was effectively beyond the employee's control." *Murphy v. Fascio*, 115 R.I. at 36, 340 A.2d at 139. Thus, the key to this analysis is whether petitioner voluntar-

---

**3.** We are concerned that *Murphy* not be read to overrule *Harraka*.

ily terminated his employment because of circumstances that were effectively beyond his control.

In the instant case, the board denied petitioner any benefits, finding that petitioner was not instructed to prepare the release in any particular manner and that petitioner's reason for leaving was personal in nature. We disagree.

The board of review, in denying benefits to petitioner, considered the evidence and testimony before it. In addition, the board in essence adopted the decision of the referee which included a finding that petitioner was not instructed by his superior to prepare the release in any particular manner. The only testimony on this issue came from petitioner; no testimony from any United Way representative appears in the record. The petitioner testified that he resigned after his superior ordered him to prepare a release that would make Clarke Symonds's appointment appear to be recent. He testified that Cornelius would not accept a release that would merely highlight Symonds's appointment as part of an announcement of Jones's appointment.[4] Because no contrary evidence was heard, there was no legally competent evidence to support a finding that petitioner was not instructed to prepare the release in any manner and we must reject this finding. *See Prospecting Unlimited, Inc. v. Norberg,* 119 R.I. at 123–24, 376 A.2d at 706.

█ In addition, the record lacks any evidence to refute testimony from the petitioner's witnesses that had he prepared the release as instructed, the petitioner would have severely and permanently damaged his relationship with the media. It appears from the record that the field of public relations requires someone in the petitioner's position to maintain a workable relationship with members of the news media. Thus, by being asked to prepare the requested release, the petitioner was being asked not only to compromise his ethics by making this announcement appear to be "new" news but also to compromise his future in his chosen profession. Had the petitioner not resigned but instead prepared the release, he would have jeopardized his effectiveness for the United Way and any future employer he may have had. Indeed, his current employer testified that the petitioner would not have been hired if he did not enjoy his good reputation with the media or if he had participated in the release of misleading information. An objective examination of the record reveals that the petitioner had good cause to leave his position. The conclusion that the petitioner resigned for purely personal reasons because he was dissatisfied with his job is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. The record reveals that the petitioner did not resign for the sole reason that it was contrary to his own standards to prepare such a statement. Instead, testimony revealed that the petitioner's resignation was necessary in order for him to continue to pursue his career in public relations in this state. If the petitioner had issued the requested release, he would no longer have enjoyed the respect of the media whose respect and cooperation is essential to his employment.

The petition for certiorari is granted, the decision of the District Court is quashed, and the records and papers certified to us are to be returned to the District Court with our decision endorsed thereon.

---

**4.** Indeed, subsequent to petitioner's resignation, the United Way issued two separate news releases. In the first, dated June 22, 1979, the United Way announced the appointment of Symonds without reference to the fact that he had been appointed to that post five to six months previously. The second release, dated July 8, 1979, announced Jones's appointment.