ROCKY HILL SCHOOL, INC.

v.

STATE OF RHODE ISLAND DEPART-
MENT OF EMPLOYMENT AND
TRAINING, BOARD OF REVIEW.

No. 94–100–M.P.

Supreme Court of Rhode Island.

Dec. 7, 1995.

John Earle, Warwick, for Plaintiff.

Valentino D. Lombardi, William G. Brody, Providence, for Defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on a petition for certiorari filed by Rocky Hill School, Inc. (petitioner), which seeks review of a judgment of the Rhode Island District Court, Sixth Division, affirming the decision of the Board of Review of the State of Rhode Island Department of Employment and Training that had determined that Kenneth N. Geiersbach (claimant), a former employee of the petitioner, had voluntarily left his position with good cause and was entitled to employment security benefits. We deny the petition for certiorari and affirm the judgment of the District Court. The facts of the case insofar as are pertinent to this petition are as follows.

On June 1, 1992, claimant, a teacher employed by petitioner for thirteen years, voluntarily terminated his employment with petitioner in order to be with his spouse, who had also been employed at Rocky Hill School but had secured another position at a school in Colorado. Her contract in Colorado commenced in July 1992. Subsequently, claimant filed for employment security benefits pursuant to G.L.1956 (1986 Reenactment) chapter 44 of title 28. The applicable provision of § 28–44–17 reads as follows:

"On and after July 2, 1978, an individual who leaves work voluntarily without good cause shall be ineligible for waiting period credit or benefits until he establishes to

the satisfaction of the director that he has subsequent to that leaving had at least four weeks of work, and in each of those four weeks has had earnings of at least twenty (20) times the minimum hourly wage as defined in chapter 42 of this title." [1]

On November 9, 1992, the director of the Department of Employment and Training (DET) issued a notice of decision granting claimant employment security benefits. The director decided that claimant, who was requesting benefits effective as of October 4, 1992, had left his job with petitioner on June 1, 1992, to relocate to Colorado with his spouse and that this leaving was "considered to be with good cause under the law" and therefore "benefits are allowed if the claimant is otherwise eligible."

The petitioner filed an employer appeal, and a hearing was held before a referee of DET's Board of Review (board) on January 6, 1993. The referee held that claimant was entitled to receive employment security benefits because he voluntarily terminated his position with petitioner with good cause pursuant to § 28–44–17. Thereafter, the referee's decision was appealed by petitioner, and the matter was heard before the board on January 28, 1993. The board, after having determined that the decision of the referee was a proper adjudication of the facts of the case and the applicable law, upheld the referee's decision.

On February 20, 1993, petitioner filed a complaint for judicial review in Sixth Division District Court. The case was submitted to a District Court master, and on July 23, 1993, he recommended that the decision of the board affirming the referee's award be reversed. The trial justice disagreed and in a decision dated February 3, 1994, found that the decision of the board was not affected by error of law and thereby entered judgment on behalf of claimant. On February 22, 1994, petitioner filed a petition for a writ of certiorari, which was granted by this court on May 5, 1994.

The sole issue before this court is the question of whether an employee who voluntarily terminates his employment to accompany his spouse to another state for relocation purposes has terminated for good cause under § 28–44–17, thereby entitling him to employment security benefits.

The petitioner argues that the District Court erred in affirming the board's decision that claimant voluntarily terminated his employment with good cause. The petitioner contends that no evidence has been presented that demonstrates that the advent of claimant's unemployment was attributable to a substantial degree of compulsion. The petitioner also asserts that the instant case does not adhere to the public policies articulated in G.L.1956 (1986 Reenactment) § 28–42–2. It alleges that claimant's termination of his employment was not beyond his control because he was fully satisfied with his employment at the school. The school further contends that claimant's departure was not attributable in any way to any fault or negative condition that the school itself caused or permitted.

The board contends that the District Court ruled correctly in affirming its decision that claimant was eligible for unemployment compensation benefits pursuant to § 28–44–17. The board argues that there is a subtle but significant difference between the situation in which an employee voluntarily terminates his/her employment to marry and relocate and the situation in which an employee voluntarily terminates a position to follow a spouse to another state or locality. It asserts that the latter situation is termination with good cause because of the importance of unity to an already existing family.

The law applicable to the issue before this court is found within § 28–44–17 of the Employment Security Act. This court has liberally construed the *good-cause provision* in the past in accordance with the statutory command of § 28–42–73. This statute reads as follows: "Chapters 42–44, inclusive, of this title shall be construed liberally in aid of their declared purpose which declared pur-

---

1. This statute was amended in 1993, the year after claimant filed for employment security ben-

efits, but the essential language quoted above remains the same.

pose is to lighten the burden which now falls on the unemployed worker and his family."

 "The question of what circumstances may constitute good cause for leaving employment is a mixed question of law and fact." *D'Ambra v. Board of Review, Department of Employment Security*, 517 A.2d 1039, 1040 (R.I.1986). However, we have also stated that when the facts found by the board of review lead only to one reasonable conclusion, the determination of "good cause" will be made as a matter of law. *Id.* In the case at bar, we are of the opinion that the facts as found could have led to more than one reasonable conclusion. We cannot say that the board committed an error of law or was clearly wrong in resolving the mixed question of law and fact in concluding as it did that claimant had left his employment voluntarily with good cause. Therefore, the trial justice was correct under the standards set forth within G.L.1956 (1993 Reenactment) § 42–35–15(g)(4), in upholding the decision of the board. *See Powell v. Department of Employment Security, Board of Review*, 477 A.2d 93, 95 (R.I.1984) (review must conform to the standards of § 42–35–15).

 Section 28–44–17 states, in part, that an individual who leaves work voluntarily without good cause shall be ineligible for waiting-period credit or employment security benefits. Therefore, one may assume that an individual who leaves work voluntarily with good cause is eligible for waiting-period credit or unemployment compensation benefits. Since our decision in *Harraka v. Board of Review of Department of Employment Security*, 98 R.I. 197, 200 A.2d 595 (1964), we have consistently held that a liberal reading of good cause would be adopted by this court. We noted in *Harraka* that "public interest demands of [the] court an interpretation sufficiently liberal to permit the benefits of the act to be made available to employees who in good faith voluntarily leave their employment because the conditions thereof are such that continued exposure thereto" would cause or aggravate nervous reactions or otherwise produce psychological trauma. *Id.* at 201, 200 A.2d at 597–98. We further noted in *Powell*, 477 A.2d at 96, that "[t]he Legislature, in enacting the Employment Security

Act, expressed a policy of liberal construction for the declared purpose of the act, that is, to lighten the burden on the unemployed worker and his or her family. * * * This court has complied with this mandate of broad, liberal construction."

The petitioner contends that the District Court erred in affirming the board's decision to grant claimant his benefits. In support of its argument, it relies on *Murphy v. Fascio*, 115 R.I. 33, 340 A.2d 137 (1975). In that case, we held "that leaving one's employment to marry and to reside with one's intended spouse in another jurisdiction does not involve the kind or degree of compulsion which the Legislature intended" just cause to comprehend. 115 R.I. at 37, 340 A.2d at 139. The petitioner argues that the factual distinction is not so significant between *Murphy* and the instant case from either a strictly legal or a public-policy point of view so as to warrant a departure from the holding in *Murphy*. In support of this argument, petitioner contends that no evidence has been presented in this case that would demonstrate that the advent of claimant's unemployment involved a substantial degree of compulsion. It therefore concludes that a voluntary termination of employment in order to accompany a spouse to another state does not constitute good cause as required by the Employment Security Act.

The petitioner's reliance on *Murphy* as authority in the present case is misplaced. In *Murphy* the former employee terminated her position in order to marry and relocate to another state, *Murphy*, 115 R.I. at 34, 340 A.2d at 138, and we held this to be a termination without good cause. *Murphy*, 115 R.I. at 37, 340 A.2d at 139. The board contends that the District Court ruled correctly in affirming its decision to grant claimant employment security benefits. The board is correct in arguing that there is a subtle but significant distinction between the facts in the present case and the facts in *Murphy*. In the instant case, the employee terminated his employment with petitioner to follow his spouse to Colorado whereas in *Murphy* the employee terminated her employment in order to marry and relocate. The board argues not only that claimant is

entitled to benefits because of the importance of unity to an already existing family but also that public policy requires that families not be discouraged from remaining together. We agree.

In addition to *Murphy*, this court has had occasion in the past to interpret § 28–44–17 and the public policy associated with it. In *Harraka* we determined that an employee who quit his job in a chemical company after discovering that he had a particular sensitivity to the chemicals had good cause to terminate. *Harraka*, 98 R.I. at 203, 200 A.2d at 598. In arriving at this conclusion, we rejected an interpretation of good cause that would have required an element of compulsion. *Id.* at 201, 200 A.2d at 597. We stated that to view the statutory language as requiring an employee to prove that he terminated his employment under compulsion is to make any voluntary termination a forfeiture of eligibility for benefits under the act. *Id.* Once again, we reject an interpretation of good cause that would require an element of compulsion.

In *Powell* we held that an employee who resigned when asked to prepare a false and misleading press release had good cause to leave his position. 477 A.2d at 97. We went on to state that in the determination of what circumstances constitute good cause, the focus need not be on the degree of compulsion involved but rather on the policies articulated in the Employment Security Act. *Id.* at 96 (citing *Murphy*, 115 R.I. at 36, 340 A.2d at 139). The petitioner's public-policy argument centers on § 28–42–2 of the act. This section of the Employment Security Act "indicates that unemployment benefits were intended to alleviate the economic insecurity arising from termination of employment the prevention of which was effectively beyond the employee's control." *Murphy*, 115 R.I. at 36, 340 A.2d at 139. The petitioner contends that the claimant's benefit claim does not adhere to the policies articulated in this statute and alleges that it is undisputed that the claimant was fully satisfied with his employment at the school and that his voluntary departure was not attributable in any way to any negative condition that the school caused or permitted. The petitioner argues that the

claimant terminated his employment without good cause as his claim does not comply with the statute. We disagree and conclude that leaving one's employment to follow a spouse to another jurisdiction does constitute good cause within the definition of that term as set forth in *Harraka supra*.

For the reasons stated, the petition for certiorari is hereby denied and the writ heretofore issued is quashed. The judgment of the District Court upholding the decision of the board granting the claimant employment security benefits is affirmed, and the papers in the case are remanded to that court with our decision endorsed thereon.

MURRAY, BOURCIER and SHEA, JJ., concur.

LEDERBERG, J., dissents.

LEDERBERG, Justice, dissenting.

The holding of the majority places upon employers an obligation to subsidize the personal choices of employees—choices over which employers have no control and over which employees have absolute control. In my opinion, because such an obligation on employers can shift the burdens assigned to parties, the task of making such a determination falls to the Legislature, not to the courts. Furthermore, the majority misapplies precedent and misinterprets the intendment of the law.

General Laws 1956 (1986 Reenactment) § 28–44–17 directs that "an individual who leaves work voluntarily without good cause shall be ineligible for waiting period credit or benefits" under the Employment Security Act. In its interpretation of good cause, this court has stated:

"In excluding from eligibility for benefit payments those who voluntarily terminate their employment *without good cause*, the legislature intended in the public interest to secure the fund from which the payments are made against depletion by payment of benefits to the shirker, the indolent, or the malingerer. However, the same public interest demands of this court an interpretation sufficiently liberal to permit the benefits of the act to be made available to employees who *in good faith*

*voluntarily leave their employment because the conditions thereof are such that continued exposure thereto would cause or aggravate nervous reactions or otherwise produce psychological trauma.*" (Emphasis added.) *Harraka v. Board of Review of Department of Employment Security,* 98 R.I. 197, 201, 200 A.2d 595, 597–98 (1964).

In *Harraka,* this court held that the claimant had satisfied the good-cause requirement of § 28–44–17 in terminating his employment because of legitimate health concerns resulting from chemicals in the environment in which he worked. *Id.* at 203, 200 A.2d at 598. Similarly, in *Powell v. Department of Employment Security, Board of Review,* 477 A.2d 93 (R.I.1984), good cause was found when a claimant chose to resign rather than to prepare a dishonest press release that could have damaged his credibility in the professional community.

In *Harraka,* and *Powell,* this court found that good cause existed in circumstances in which *a condition of employment* created a real and legitimate reason for voluntary, unilateral termination of employment by an employee. These holdings provide stark contrast to the cases in which this court has found no good cause. In *Cahoone v. Board of Review of the Department of Employment Security,* 104 R.I. 503, 505, 246 A.2d 213, 214 (1968), this court held that a petitioner had not shown good cause when he terminated his employment "*not by reason of job unsuitability or an inability to perform the assigned work,* but because his assignment was to drive a truck, rather than to deliver mail, and because he was disgruntled when at the end of a long working day he found his automobile blocked." (Emphasis added.) Most notable among this court's decisions under § 28–44–17, for purposes of the instant case, is the holding in *Murphy v. Fascio,* 115 R.I. 33, 340 A.2d 137 (1975), in which this court held that voluntarily leaving one's employment to marry and reside with one's spouse in another jurisdiction is not good cause within the meaning of § 28–44–17.

The only distinction cited by the board and the majority between *Murphy* and the instant case is that in *Murphy* an unwed woman left her employment in order to marry whereas this case involves a married man leaving his employment for the sake of his wife's career. No reference was made to, and the record does not reflect, any "reason of job unsuitability" or "inability to perform the assigned work" that would justify requiring petitioner to subsidize claimant's relocation. Nor is there evidence, as in *Powell,* that petitioner in any way acted so as to justify termination by claimant of his employment.

The provision of benefits to employees who voluntarily, but with good cause, terminate the employment relationship is "intended to alleviate the economic insecurity arising from termination of employment the prevention of which was *effectively beyond the employee's control.*" (Emphasis added.) *Murphy,* 115 R.I. at 36, 340 A.2d at 139. In the instant matter, claimant may have had a good *reason* to terminate his employment, but whether that circumstance translates into *good cause* for providing benefits under the Employment Security Act is an interpretation best resolved by a legislative pronouncement.

My dissent in this case is not intended to repudiate the majority's laudable desire to protect the institution of marriage. But it is the Legislature's prerogative to decree that the preservation of marriage requires employers to subsidize the private, voluntary choices that employees make in order to accommodate their marital relationship. The Legislature, however, has not done so, and this court should not assume the role of designing an unemployment-compensation program more expansive than that provided by law and precedent.

One need look no further than the instant case to illustrate the anomalous results that will follow from the majority's holding. The petitioner is a small employer that hired the claimant and his wife, both of whom the petitioner was willing to continue in its employ. Thus, an employer supporting the very institution that the majority seeks to preserve now finds itself in the position of financing the professional-advancement opportunities of employees it treated with respect and fairness.

For the reasons stated above, I would sustain the petitioner's appeal.