**RHODE ISLAND TEMPS, INC.**

v.

**DEPARTMENT OF LABOR AND TRAINING, BOARD OF REVIEW et al.**

No. 99–73–M.P.

Supreme Court of Rhode Island.

April 27, 2000.

Michael K. Marran, for plaintiff.

Donald G. Elbert, Jr., Tiverton, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## O P I N I O N

PER CURIAM.

In this petition for certiorari, Rhode Island Temps, Inc., seeks review of a judgment entered by the District Court affirming an award of unemployment benefits to Karen Martino. Jurisdiction in this Court is pursuant to the Administrative Procedures Act, G.L.1956 § 42–35–16.

### I

### Case Facts and Travel

The material facts are not in dispute. Rhode Island Temps, Inc. (Rhode Island Temps), is a temporary employment agency, headquartered in Warwick, Rhode Island. Karen Martino (Martino) had been employed by Rhode Island Temps in a variety of temporary clerical and secretarial positions, the last of which was a three-and-a-half-month-long temporary position that terminated on August 1, 1997. Subsequent to that date, Martino was offered

and refused a first shift data entry position offered by Rhode Island Temps. She instead requested second shift work because she wanted to have first shift time open to search for permanent full-time employment. Rhode Island Temps, acceding to her request, offered her a second shift position in manufacturing for which she would receive on-the-job training. Martino this time refused, for the reason that she desired only office-type or clerical positions. Following that, her second refusal, Martino applied for unemployment benefits pursuant to the Rhode Island Employment Security Act (the Act), G.L. 1956 chapter 44 of title 28. After investigation, the Director of the Department of Labor and Training (the Director) denied her claim, finding that her refusal to accept first shift work was without good cause and that her refusal to accept the second shift manufacturing position was for personal reasons. Those findings by the Director rendered Martino ineligible for unemployment benefits pursuant to the provisions of § 28–44–20. He also found that her refusal to accept either position, in the absence of evidence of unsuitability, restricted her availability for work and justified denial of benefits pursuant to § 28–44–12. The Director then determined that Martino had been overpaid unemployment benefits for the weeks ending August 9, August 23, and September 6, 1997, and ordered her to reimburse the Department in the amount of $612 for those overpayments.

Martino appealed the Director's three decisions to a Referee of the Board of Review (the Referee). Following a hearing [1], the Referee first found that Martino's refusal of the first shift offer of data entry work did not disqualify her from benefits, but rather that her stated preference for second shift work in order to conduct a job search during first shift hours constituted good cause for purposes

---

1. Rhode Island Temps did not appear at the hearing, although the Referee found that it had received notice of the hearing.

of § 28–44–20. The Referee next found that Martino's refusal of a second shift manufacturing position constituted good cause for purposes of § 28–44–20 because her previous work experience had been limited solely to clerical positions. Finally, the Referee found that Martino was available for and actively seeking work during first shift hours and that her stated preference for second shift work did not restrict her availability for work for purposes of § 28–44–12. The Director's decisions were thus reversed and Martino was granted unemployment benefits. Rhode Island Temps appealed the Referee's decision to the Department of Labor and Training Board of Review (the Board of Review). After hearing, the Board of Review affirmed all three decisions of the Referee. Rhode Island Temps then filed a timely appeal of the Board of Review's decisions to the District Court, Sixth Division, pursuant to § 42–35–15. There, the District Court trial justice affirmed the decision appealed from and ordered that unemployment benefits be paid to Martino. Rhode Island Temps then filed its petition for certiorari with this Court, alleging therein that the District Court trial justice had erred as a matter of law in affirming the Board of Review's decision, because: (1) Martino's refusal of suitable first shift employment was without good cause in contravention of § 28–44–20, (2) her refusal of suitable second shift manufacturing employment was also without good cause in contravention of § 28–44–20 and (3) her refusal of these positions without good cause restricted her availability for work in contravention of § 28–44–12.

## II

### Standard of Review

We preface our analysis of the case before us by noting that Rhode Island Temps' petition for certiorari is filed pursuant to § 42–35–15 of the Administrative Procedures Act (APA) and our review is governed by the review standards set out in § 42–35–15. *Powell v. Department of Employment Security, Board of Review*, 477 A.2d 93, 95 (R.I.1984) (citing *Berberian v. Department of Employment Security, Board of Review*, 414 A.2d 480, 482 n. 2 (R.I.1980)). Section 42–35–15 provides in part:

"(a) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, [inferences], conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error [of] law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Under the APA this Court reviews deferentially the factual determinations made by the factfinder in an administrative proceeding. *See Poisson v. Comtec Information Systems, Inc.*, 713 A.2d 230, 233 (R.I.1998). On certiorari, we do not weigh the evidence but rather, as an extension of the administrative process, we limit the scope of our review to the record as a whole to determine whether any legally competent evidence exists therein to support the trial court's decision or whether the trial court committed error of law in reaching its decision. *Wayne Distributing Co. v. Rhode Island Commission for Human Rights*, 673 A.2d 457, 459 (R.I.1996) (citing *Rhode Island Department of Mental Health, Retardation, and Hospitals v. Doe*, 533 A.2d 536, 539 (R.I.1987)); *see also Poisson*, 713 A.2d at 233. We have previ-

ously defined legally competent evidence as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." *Center For Behavioral Health, Rhode Island, Inc. v. Barros,* 710 A.2d 680, 684 (R.I.1998) (quoting *Newport Shipyard, Inc. v. Rhode Island Commission for Human Rights,* 484 A.2d 893, 897 (R.I.1984)). Despite our deference to the administrative process, however, we "retain the power to review all questions of law," *Environmental Scientific Corp. v. Durfee,* 621 A.2d 200, 208 (R.I.1993) (citing *Hometown Properties, Inc. v. Rhode Island Department of Environmental Management,* 592 A.2d 841, 843 (R.I.1991)), and an administrative decision, *inter alia,* can be vacated for such errors of law. *Durfee,* 621 A.2d at 208.

### III

### Section 28–44–20

The first issue before this Court is the question of whether an employee who refuses to accept suitable work in order to look for a permanent full time job has done so with good cause pursuant to § 28–44–20, thus entitling that employee to unemployment benefits. The District Court trial justice concluded that the Board of Review correctly applied § 28–44–20 to Martino's claim and concluded that under *Huntley v. Department of Employment Security,* 121 R.I. 284, 397 A.2d 902 (1979),[2] and under two District Court cases, *Goodrich v. DET,* A.A. 92–302, and *Pizzarelli v. DET,* A.A. 93–75, that "the work restriction was with good cause, and that it did not substantially impair the claimant's attachment to the labor market."[3]

The District Court trial justice also determined that in respect to Martino's refusal of the second shift manufacturing position, her refusal was likewise with good cause. The trial justice stated that "the Court has not found any cases directly on point, but believes that a claimant is not required to take a job outside of his/her regular field," and thus the position offered did not constitute suitable employment for purposes of the Act.

We first turn to the language of the Act itself. Section 28–44–20, refusal of suitable work, provides in part:

"(a) If an otherwise eligible individual fails, without good cause, either to apply for suitable work when notified by the employment office, or to accept suitable work when offered him or her, he or she shall thereby become ineligible for waiting period credit or benefits for the week in which that failure occurred * * *.

(b) 'Suitable work' shall mean any work for which the individual in question is reasonably fitted, which is located within a reasonable distance of his or her residence or last place of work and which is not detrimental to his or her health, safety, or morals. No work shall be deemed suitable, and benefits shall not be denied under chapters 42—44 of this title to any otherwise eligible individual for refusing to accept new work, under any of the following conditions:

(1) If the position offered is vacant due directly to a strike, lockout, or other labor dispute;

(2) If the wages, hours, or other conditions of the work are substantially less favorable to the employee than those prevailing for similar work in the locality;

---

**2.** Contrary to the trial justice's conclusion in the record, *Huntley v. Department of Employment Security,* 121 R.I. 284, 397 A.2d 902 (1979) did not expand the statutory criteria of G.L.1956 § 28–44–20. Rather, *Huntley* analyzed § 28–44–12, availability for work.

**3.** We note that the trial justice apparently analyzed Martino's claim in the context of restrictions to the availability for work, § 28–44–12. We believe however, as did the Director, that Martino's initial claim is more appropriately analyzed under § 28–44–20, refusal of suitable work.

(3) If, as a condition of being employed, the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization."

■■■ Upon review of the record before us, we conclude that the trial justice erred in finding that Martino had not refused suitable work. We note in the record no evidence suggesting that the offer of first shift data entry was not suitable work for Martino as that term is defined in § 28–44–20(b). Nor do we discern any language in § 28–44–20 creating a standard separate or unique for temporary employment agency employees refusing to accept suitable, albeit temporary, work. "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Providence & Worcester Railroad Co. v. Pine*, 729 A.2d 202, 208 (R.I.1999) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996)). The plain meaning of the language in § 28–44–20 requires that a claimant accept a position unless that position can be shown to fall within the exceptions noted *supra. See also* § 28–44–62(a)(8) (" '[s]uitable work' means, with respect to any individual, any work which is within that individual's capabilities"). A claimant who fails to accept suitable work has not fulfilled the statutory requirements in order to be eligible for unemployment benefits. In the case at bar, there is no evidence in the record to indicate that Martino was incapable of performing the first shift position or that the job was unsuitable pursuant to an enumerated factor set forth in § 28–44–20. Indeed, the record indicates that Martino, testifying before the Referee, admitted "I have done data entry * * * but that's what they offered me and I said I would prefer a job on second shift." Nothing in the plain language of the statute permits a stated preference by a claimant to trump the statutory requirements so set forth. Indeed, a contrary holding, recognizing as

valid a claimant's preference under § 28–44–20, would severely curtail a temporary employment agency's ability to assign first shift work because it can be presumed that a significant number of temporary employees at any given time are searching for permanent employment and thus would presumably prefer not to work first shift hours. We therefore decline to extend § 28–44–20 and the Act as a whole to instances, such as the case at bar, in which a claimant has refused suitable work for reasons other than those specified in the Act. Thus, we conclude that the trial justice erred as a matter of law in affirming the Board of Review's decision and believe that substantial rights of the appellant in this case have been prejudiced by the trial justice's error.

■■■ We similarly believe that the trial justice erred in determining that work outside a claimant's field of prior experience can be considered unsuitable for purposes of § 28–44–20. There is no evidence in the record before us to indicate that the manufacturing position was in any manner unsuitable for Martino. Despite her protestations that "I don't have any experience whatsoever [in manufacturing] and my field is in the secretarial field," we note from the record that the position offered was a trainee position, with on-the-job training provided, and the pay scale was certainly commensurate with the position and Martino's past positions. In the light of such facts and in the absence of any evidence that the position was somehow unreasonably fitted, unreasonably located or detrimental to "health, safety, or morals," we conclude that a mere stated preference for work within a claimant's field of previous experience does not render other employment opportunities in other fields unsuitable for purposes of § 28–44–20. We believe that a claimant's voluntary decision to refuse suitable work in another field and to remain unemployed while continuing to collect unemployment benefits is unsupported by the plain language of

§ 28–44–20 and runs contrary to the public policy design and intent of the Act as a whole.

## IV

### Section 28–44–12

We now turn to the issue of whether an employee who refuses suitable work because of a stated preference for a particular shift or because of a stated preference for a particular type of job is considered available for work pursuant to § 28–44–12. The District Court trial justice determined "that the claimant was available for work during this period." We are of the opinion that her determination is affected by error of law.

Section 28–44–12, availability and registration for work, provides in pertinent part:

"(a) An individual shall not be eligible for benefits for any week of his or her partial or total unemployment unless during that week he or she is physically able to work and available for work. To prove availability for work, every individual partially or totally unemployed shall register for work and shall;

(1) File a claim for benefits within such time limits and with such frequency and in such manner, in person or in writing, or as the director may prescribe;

(2) Respond whenever duly called for work through the employment office; and

(3) Make an active, independent search for suitable work.

(b) If an unemployed individual has been determined to be likely to exhaust regular benefits and to need reemployment services pursuant to a profiling system established by the director, the individual shall be eligible to receive benefits with respect to any week only if the individual participates in reemployment services, such as job search assistance services, unless the director determines that:

(1) The individual has completed such services; or

(2) There is justifiable cause for the individual's failure to participate in such services."

In interpreting the Act we are mindful that G.L.1956 § 28–42–73 provides "Chapters 42–44 of this title shall be construed liberally in aid of their declared purpose, which declared purpose is to lighten the burden which now falls on the unemployed worker and his family." *See Rocky Hill School, Inc. v. State Department of Employment and Training, Board of Review,* 668 A.2d 1241, 1242–43 (R.I.1995); *see also Harraka v. Board of Review of Department of Employment Security,* 98 R.I. 197, 200 A.2d 595 (1964). However, "[t]he employment security act, even when liberally construed, was designed to provide benefits for unemployed individuals who are ready, willing *and able to work, but who are unable to find it." Chaharyn v. Department of Employment Security,* 85 R.I. 75, 80, 125 A.2d 241, 243 (1956). (Emphasis in original.) In *Chaharyn,* this Court interpreted "available for work" as requiring a claimant to "register as able and willing to work and be ready to accept any suitable work whenever offered to him [or her] without attaching thereto any restrictions or conditions other than those specifically provided for in the statute." *Id.* at 80–81, 125 A.2d at 244. Like the Court in *Chaharyn,* when interpreting what now is § 28–44–12, we are in accord that:

"[t]here is nothing in the statute to justify the conclusion that the legislature intended that a claimant might limit or restrict his availability for work to certain hours of the day, at least where the work he is qualified to perform is not likewise limited. To permit a claimant to place such restrictions on his availability, other than as specifically provided for in the statute, would violate the spirit and purpose of the act." *Chaharyn,* 85 R.I. at 80, 125 A.2d at 243–44.

In *Huntley v. Department of Employment Security*, 121 R.I. 284, 397 A.2d 902 (1979), we had occasion to amplify our holding in *Chaharyn*, by articulating a two-part analysis concerning the availability for work:

"First: are these restrictions bottomed upon good cause? If the answer is negative, the inquiry ends and the claimant is ineligible for benefits under the Employment Security Act. If the answer is affirmative, the second stage of the inquiry must be made: do the restrictions, albeit with good cause, substantially impair the claimant's attachment to the labor market? If the answer to this inquiry is affirmative, then the claimant is still ineligible for benefits under the Act." *Huntley*, 121 R.I. at 292–93, 397 A.2d at 907.

Thus, we proceed to an analysis of whether Martino's decision to refuse suitable work was done with good cause, noting that the determination of good cause is a mixed question of law and fact. *D'Ambra v. Board of Review, Department of Employment Security*, 517 A.2d 1039, 1040 (R.I.1986). "However, we have also stated that when the facts found by the board of review lead only to one reasonable conclusion, the determination of 'good cause' will be made as a matter of law." *Rocky Hill School, Inc.*, 668 A.2d at 1243 (citing *D'Ambra*, 517 A.2d at 1040) (interpreting § 28–44–17).

In determining good cause for purposes of § 28–44–12, we must be mindful of the provisions of § 28–44–17 (as amended by p.l.1997, ch. 70, § 1, July 1, 1997) concerning voluntarily leaving without good cause, as we must read this section in harmony with § 28–44–12 and the entirety of the Act. Section 28–44–17 provides in part:

"An individual who leaves work voluntarily without good cause shall be ineligible for waiting period credit or benefits * * *. For the purposes of this section, voluntarily leaving work without good cause shall include voluntarily leaving work with an employer to accompany, join or follow his or her spouse in a new locality in connection with the retirement of his or her spouse, *or failure by a temporary employee to contact the temporary help agency upon completion of the most recent work assignment to seek additional work unless good cause is shown for said failure*; provided, however, that the temporary help agency gave written notice to the individual that the individual is required to contact the temporary help agency at the completion of the most recent work assignment to seek additional work." (Emphasis added.)

We have held that a claimant has left work voluntarily with good cause when "the conditions thereof are such that continued exposure thereto would cause or aggravate nervous reactions or otherwise produce psychological trauma," *Harraka*, 98 R.I. at 201, 200 A.2d at 598, and emphasized that "the key to this analysis [of § 28–44–17] is whether petitioner voluntarily terminated his employment because of circumstances that were effectively beyond his control." *Powell*, 477 A.2d at 96–97. Accordingly, in the same vein, we have necessarily concluded that good cause did not exist in situations where a claimant's decision to terminate her employment "was purely voluntary and not due to circumstances beyond her control," *id.* at 96, and where a claimant's job "was not unsuitable and that his reason for terminating was personal dissatisfaction with the nature of the employment." *Cahoone v. Board of Review of Department of Employment Security*, 104 R.I. 503, 505, 246 A.2d 213, 214 (1968).

We discern from the record before us no evidence indicating that the positions offered to Martino were unsuitable in any manner. Rather, we note that her decision to refuse the offers of employment was completely voluntary in nature and reflected a conscious decision on her

part to exclude herself from the labor market.[4] Because we believe that the Referee's findings of fact adopted by the Board of Review lead only to one reasonable conclusion concerning Martino's availability for work, we conclude, as a matter of law, that Martino's decision to voluntarily refuse the jobs offered to her was based on restrictions not bottomed upon good cause pursuant to *Huntley, supra,* and rendered her unavailable pursuant to § 28–44–12. Thus Martino is not entitled to benefits pursuant to the Act[5] and has been overpaid pursuant to § 28–42–68.

For the above reasons stated, the petition for certiorari is granted. The judgment of the District Court upholding the decision of the Board of Review granting the claimant Martino unemployment benefits is quashed, and the papers in the case are remanded to that court with our decision endorsed thereon.

4. We additionally note that Martino's decision to accept only second shift clerical or secretarial work could well have the effect of substantially impairing her attachment to the work force under the second prong of the *Huntley* test because such work is primarily performed during the first shift.

5. We are of the opinion that there was a similar absence of good cause pursuant to 28–44–17, but because of our holding herein, we are not constrained to reach this issue.