**AMERICAN HOECHST CORP.**

v.

**Susan CARR.**

**No. 92–128–M.P.**

Supreme Court of Rhode Island.

March 9, 1993.

Edward P. Sowa, Jr., Kevin S. Cotter, Gunning, LaFazia & Gnys, Inc., Providence for plaintiff.

Seth K. Gifford, Providence, for defendant.

OPINION

MURRAY, Justice.

This case came before us on the petition of the employer, American Hoechst Corp. (American), for writ of certiorari. The employer seeks review of a decree of the Appellate Division of the Workers' Compensation Court[1] that reversed a trial

---

1. At the time the employer filed a petition in 1987 to review an earlier decree, the Workers' Compensation Commission retained the juris-diction necessary to carry out the duties delegated to it under the provisions of the Workers' Compensation Act, G.L.1956 (1986 Reenact-

judge's decision that the employee, Susan Carr (Carr), was no longer disabled in total or in part from the effects of an occupational disease. We affirm.

Carr was employed by American as a senior laboratory technician. On March 10, 1980, she was diagnosed as suffering from berylliosis, a lung disease that severely reduces one's exercise capacity. By decree dated June 3, 1983, a trial judge found Carr disabled as a result of an occupational disease and awarded her workers' compensation benefits. The appellate division entered a final decree on December 1, 1983, affirming the trial judge. The employee thereafter continued to be paid benefits.

In 1987 American filed a petition with the Workers' Compensation Court, seeking review of the 1983 decree of the appellate division. The employer averred two specific reasons for reviewing that decree: (1) "employee's incapacity for work has ended" and (2) "[t]o determine a controversy, namely that the employee is no longer suffering from the condition that was originally diagnosed." A hearing on this matter commenced before a single trial judge on June 22, 1987, and inexplicably resumed on May 10, 1989.

In the course of this hearing, employee presented just two witnesses, Carr and Dr. Richard Irwin (Dr. Irwin), a pulmonary specialist who had treated Carr since September 1978. Because Dr. Irwin's testimony on direct examination focused primarily on the bills sent to Carr for the medical services he provided, employee submitted the deposition of Dr. Irwin in which he testified at great length about her lung condition. He reviewed the results of employee's X rays, described the sounds he heard when he listened to her chest from the back, and determined that employee had "clubbing" of her fingers, all of which are consistent with chronic berylliosis. He also discussed the methods and results of employee's exercise testing, which revealed that she was severely limited in her exercise capacity, a pattern that again suggests a lung disease such as berylliosis. Doctor Irwin further disclosed that he treated her berylliosis by prescribing prednisone, a steroid that has been known to aggravate gastric ulcers and indeed did cause Carr's ulcer problem to worsen. Doctor Irwin concluded that she remains totally incapacitated for three reasons: her limited exercise function, the painful effect of her ulcers, and her subsequent emotional state caused by these physical conditions.

In establishing its case before the trial judge, employer relied solely on the deposition testimony of Dr. Edward Gaensler (Dr. Gaensler), a professor at Boston University Medical School and an expert in lung physiology and general and thoracic surgery. Doctor Gaensler examined Carr on only one occasion, in September 1986, at the request of employer's insurance company, to evaluate her present disability status and her present pulmonary impairment. In his deposition testimony Dr. Gaensler maintained that copies of X rays taken of her chest two months prior to the examination appeared normal, that there was no sign of clubbing in her fingertips, and that both her pulmonary function studies and her lung capacity were normal. He concluded that she had no measurable degree of pulmonary impairment and was able to engage in any kind of work offered her. Notwithstanding his prognosis Dr. Gaensler stated at the deposition as well as in an evaluation letter to employer's insurance company, which was included in the record as employer's exhibit, that he objected to the original diagnosis that employee suffered from berylliosis. He urged that although it was likely that she had had a mild case of sarcoidosis, a less severe chronic infectious disease, at the time of

---

ment) chapters 29 through 38 of title 28. Section 28–30–1. In the course of this litigation, however, chapter 332 of Public Laws 1990 amended the Workers' Compensation Act to replace the Workers' Compensation Commission with the Workers' Compensation Court, a judicially and administratively independent entity.

P.L.1990, ch. 332, art. I, § 1. Additionally, chapter 332 renamed the "trial commissioners" the "trial judges" and the "appellate commission" the "appellate division." P.L.1990, ch. 332, art. I, § 5. For purposes of clarity in this opinion, we shall refer to each of these entities as they are known presently.

his examination she had recovered completely from whatever lung disease she may have had.

On June 20, 1989, the trial judge entered a decree finding that American had proven by a fair preponderance of the credible evidence that Carr was no longer totally or partially disabled from the effects of her berylliosis and that she could return to her former job duties without posing a hazard to her health. The trial judge thereafter ordered that American may suspend the payment of employee's benefits.

In his decision supporting this decree the trial judge acknowledged a conflict in the medical opinions of Dr. Gaensler and Dr. Irwin but admittedly accepted only Dr. Gaensler's viewpoint. The trial judge wrote, "I prefer to rely upon the opinions of Dr. Gaensler which I found to be much more thorough, inclusive, and emphatic. * * * As a result, and in reliance upon the medical opinions of Dr. Gaensler, upon whom I wish to rely, I find that [employer] has proven those allegations as contained in the petition."

The employee filed an appeal with the Appellate Division of the Workers' Compensation Court, seeking de novo review of the record below. After reviewing the deposition testimony of the two physicians, the appellate division found that employer had failed to prove by legally competent evidence (1) that Carr's incapacity had ended and (2) that she no longer suffered from berylliosis. The appellate division also concluded that employee was no longer totally incapacitated for work but that she remained partially incapacitated and is entitled to compensation benefits. The employer filed a timely petition for writ of certiorari with this court. We issued the writ on July 10, 1992, and we now affirm the decree of the appellate division.

In reviewing a decree of a trial judge, the appellate division is afforded a de novo standard of review but is limited to a survey of the record as developed below. See Davol, Inc. v. Aguiar, 463 A.2d 170, 173 (R.I.1983). However, this court has found that the appellate division's de novo standard of review is qualified. When reviewing findings based on a witness's credibility, the appellate division first must find that the trial judge was clearly wrong or that he or she misconceived or overlooked material evidence in arriving at that determination of credibility. Id. at 174. Only after the appellate division concludes that the trial judge erred in this respect may it disturb the factual findings that were based on such erroneous credibility assessments. Mulcahey v. New England Newspapers, Inc., 488 A.2d 681, 683 (R.I.1985); Davol, Inc., 463 A.2d at 174. In accordance with these decisions, employer argues that the appellate division was bound by the trial judge's decision to rely on Dr. Gaensler's medical opinion as he found it was more competent and credible than Dr. Irwin's. We disagree.

Although we steadfastly agree that a trial judge is in the best position to appraise a person's demeanor on the witness stand, Grimes Box Co. v. Miguel, 509 A.2d 1002, 1004 (R.I.1986), we do not believe that the trial judge in this case was presented with such a situation. The two-day hearing over which the trial judge presided included the unrefuted testimony of Dr. Irwin and the testimony of Carr. However, the actual medical opinions of Dr. Irwin and Dr. Gaensler that conflicted were presented in their separate deposition transcripts. Because the trial judge did not have an opportunity to consider Dr. Gaensler's demeanor personally, we believe that the trial judge did not weigh Dr. Gaensler's credibility against his minimal perception of Dr. Irwin's demeanor. The trial judge's reliance on Dr. Gaensler's medical opinion rather than Dr. Irwin's was merely a preference and not a credibility determination, and therefore the record below was subject to de novo review by the appellate division without limitation.

The employer next contends that the appellate division erred on a question of law when it concluded that Dr. Gaensler's testimony was incompetent because he rejected employee's original diagnosis. Although we agree that Dr. Gaensler's medical opinion was incorrectly disqualified as being incompetent, we do not believe that its in-

clusion would have changed the outcome of this case.

■ This court recently addressed the issue of what constitutes competent medical testimony when an employer seeks to prove that an employee's disability has ended. In *C.D. Burnes Co. v. Guilbault*, 559 A.2d 637, 640 (R.I.1989), we stated that this type of review "does not require a comparison of employee's present condition to [his or] her past condition or knowledge of prior disability but only knowledge of present ability to work." Doctor Gaensler's disagreement with the original diagnosis, then, would be of no consequence to his opinion regarding employee's present disability or lack thereof. Notwithstanding the appellate division's erroneous decision to purge this testimony from the record, we find that in applying its de novo standard of review, the appellate division properly considered all the evidence before disregarding Dr. Gaensler's medical opinion. Therefore our review is limited only to finding support on the record to sustain the appellate division's decree that found that American had failed to prove that Carr's incapacity had ended and that she no longer suffered from berylliosis.

■ The only question that remains is whether there is any legally competent evidence to support the appellate division's factual finding that Carr remains partially incapacitated as a result of her industrially caused berylliosis. *See Mulcahey*, 488 A.2d at 684. Doctor Irwin, the employee's treating physician, offered a substantial amount of evidence concerning her lung condition and her related stomach problems. He adequately reviewed the results of various tests administered to her, described her physical infirmities, and concluded that she remained incapacitated as a result of her berylliosis. Consequently we find that the appellate division's decision was supported by the evidence on the record, and we affirm its holding that the employee is partially incapacitated as a result of her berylliosis.

Accordingly the employer's petition for certiorari is denied, and the writ heretofore issued is quashed. The decree of the appellate division is affirmed, and the case may be remanded to the Workers' Compensation Court with our decision endorsed thereon.