Robert POISSON

v.

**COMTEC INFORMATION SYSTEMS, INC.**

No. 96–546–M.P.

Supreme Court of Rhode Island.

June 8, 1998.

Russell Sicard, Warwick, for Plaintiff.

Lincoln D. Almond, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes to us on a petition for certiorari by the employer, Comtec Information Systems, Inc. (Comtec or employer), from a final decree of the Workers' Compensation Court Appellate Division (Appellate Division) reversing a decision of the Director of the Department of Labor (director) rendered in favor of the defendant. For the reasons adduced below, we grant the petition for certiorari and quash the decree of the Appellate Division. The facts insofar as pertinent to this petition for certiorari are as follows.

The employee, Robert Poisson (Poisson or employee), suffered an injury to his lower back on March 5, 1993, in the course of his employment with Comtec. The injury was reported to Poisson's supervisor, Kerry T. Dwyer (Dwyer), Comtec's production manager, on or about March 11, 1993.

Poisson was examined at the Landmark Medical Center on March 15, 1993. The resulting medical report allowed Poisson to return to work in a light-duty capacity provided he engage in "no lifting or bending until follow-up." Consequently Dwyer removed Poisson from his regular duties as a printing-press operator because that work required lifting paper rolls in excess of forty pounds. Poisson was placed thereafter on light-duty assignments.

Poisson was absent from work beginning April 6, 1993, pursuant to a note from J.W. Hayes, M.D. (Dr. Hayes). Subsequent notes from Dr. Hayes extended Poisson's absence through April 30, 1993. By note dated April 30, 1993, Dr. Hayes indicated that Poisson was able to return to light-duty work as of May 3, 1993, with the following restrictions: "[N]o prolonged standing and sitting—no pulling, no pushing, freedom to change positions."

Following Poisson's return to work, Comtec, through supervisor Dwyer, accommodated Poisson's physical restrictions—assigning him to a variety of light-duty activities including cardboard-box assembly, sweeping, prepping, and core cutting. Core cutting was described at the hearing before the director as follows:

"Core cutting involves a machine that looks like an office desk, and has a protruding shaft which a cardboard tube is placed over the shaft and then a utility knife is placed up against the core to cut the core * * *. The core is then taken off the shaft, placed in a cardboard box, and the longer [remaining] core is placed back onto the shaft."

Dwyer further explained that the only lifting involved in cutting cores required the operator to remove a cardboard tube weighing "a couple of ounces" from the shaft of the machine. In addition Dwyer testified that he instructed Poisson "to move about and to stretch * * * he could feel free to stretch, bend, walk around if he'd like" in connection with the assigned light-duty tasks including core cutting. Further testimony established that other Comtec employees had been assigned to cut cores following injuries requiring light duty.

During the rest of May and through June 16, 1993, Poisson worked approximately two to three weeks at light-duty tasks including core cutting. Poisson testified that he performed the core-cutting job "three or four different times." On June 16, 1993, Poisson arrived at the Comtec facility with another note from Dr. Hayes indicating that he had been under Dr. Hayes's care and that he "was not able to work" from June 4 through June 16, 1993. This note, however, offered no opinion regarding the employee's ability to return to work thereafter. According to Dwyer's testimony, Poisson informed him that he was "fit and able to report back to work and he was willing to do his regular assignment as a pressman." However, because the June 16 medical note did not state that Poisson was cleared to return to his regular full-capacity duties as a pressman, Dwyer and Poisson's immediate supervisor, David Morgan (Morgan), decided that he would remain on light-duty assignment pending further medical clearance. Informed of this decision, Poisson elected to return two days later, on June 18, 1993, to begin his light-duty assignment.

On June 18, 1993, Poisson reported for work, punched his timecard at 6:51 a.m., and was informed by Morgan that he was assigned to the core-cutting job. Dwyer testified that upon being assigned to cut cores, Poisson refused, stating, "I don't want to cut cores, period." According to the employee, he told first Morgan and then Dwyer that he was unable to perform core cutting as directed because performing that particular job caused him discomfort because it involved sitting. Poisson testified that when cutting cores, he had to switch "from cheek to cheek, and what was happening, my sides started hurting." Poisson was informed by Dwyer that core cutting was the only light-duty assignment available and that Comtec expected him to perform it or leave. Poisson punched his timecard at 7:06 a.m. and left the building. Thereafter Poisson was notified by letter dated June 18, 1993, that Comtec had terminated his employment.

On October 26, 1993, Poisson filed a Demand for Reinstatement with Comtec and the Department of Labor, pursuant to G.L. 1956 § 28–33–47. Comtec argued that the right to reinstatement terminated upon Poisson's refusal of a bona fide offer of light-duty employment on June 18, 1993, to wit, core cutting. The case was tried before the director on January 18, 1994, with Poisson and Dwyer testifying. The director found in favor of Comtec. Specifically the director concluded that Poisson had forfeited his right to reinstatement on June 18, 1993, upon his refusal of Comtec's bona fide offer of light-duty employment.

Poisson appealed this decision, pursuant to Rule 2.32 of the Workers' Compensation Court Rules of Practice, to a trial judge of the Workers' Compensation Court on March 1, 1994. After reviewing the briefs submitted by the parties, reviewing the record of the proceedings before the director, and entertaining argument from counsel, the Workers' Compensation Court judge affirmed the director's decision, concluding that sufficient evidence existed in the record to support the director's finding that Poisson had refused a bona fide offer of suitable light-duty employment.

Poisson next appealed to the Workers' Compensation Court Appellate Division. The Appellate Division vacated the decision of the director and remanded the matter to the Department of Labor for further findings to determine whether the employee had made a timely demand for reinstatement pursuant to § 28–33–47. The Appellate Division concluded that the director had "overlooked or misconceived material probative evidence in determining that the employer made a bona fide offer of light-duty employment suitable to this employee [and in] determining that the employee's right to reinstatement terminated based upon the employee's refusal of light-duty employment." The crux of the Appellate Division's reversal of the director's decision was its conclusion that pursuant to the Workers' Compensation Act § 28–33–47(c)(1)(iv), "evidence must be presented which establishes that the employee is physically capable of performing such light-duty" and that in this case "no evidence was presented which indicated that the employee was physically capable of performing the task of core cutting as of June 18, 1993."

In its brief in support of the petition for certiorari Comtec contends that the Appellate Division erred as a matter of law when it (1) substituted its judgment for that of the director on the issue of whether core cutting was a suitable light-duty assignment, (2) held that the director's finding of suitable light-duty employment under § 28–33–47 could be supported only by medical evidence, and, (3) exceeded its authority by applying the wrong standard of review to the facts as found by the director.

### Standard of Review

Pursuant to G.L.1956 § 28–35–30 this Court may set aside a decree of the Appellate Division upon a finding that, inter alia, the Appellate Division erred on questions of law or equity. "It is not within the Supreme Court's province to review the evidence de novo and pass upon the credibility of witnesses." *Claros v. Highland Employment Agency,* 643 A.2d 212, 214 (R.I.1994). Similarly the Appellate Division's review, like that of the trial judge, of the director's findings of fact is extremely deferential. As we

have oft times repeated, the factfinder (here the director) is "in the best position to observe the appearance of a witness, his or her demeanor, and the manner in which he or she answers questions." *Blecha v. Wells Fargo Guard–Company Service*, 610 A.2d 98, 103 (R.I.1992) (quoting *Quintana v. Worcester Textile Co.*, 511 A.2d 294, 295 (R.I.1986)); *Davol, Inc. v. Aguiar*, 463 A.2d 170, 174 (R.I.1983). Like a trial judge of the Workers' Compensation Court, issues of credibility should be determined by the director and accorded great weight. *See Quintana*, 511 A.2d at 295. "The [director's] exercise of his factual discretion is binding unless those findings are unsupported by legally competent evidence." *Blecha*, 610 A.2d at 103.

Section 28–33–47(d)(2) provides for review of a director's decision of a reinstatement claim:

"(iv) The review proceedings shall be governed by the workers' compensation court rules of procedure * * *.

"(v) The workers' compensation court shall not substitute its judgment for that of the director as to the weight of the evidence on questions of fact. The workers' compensation court may affirm the decision of the director or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, conclusions or decisions are: * * * (4) affected by * * * error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious of characterized by abuse of discretion or clearly unwarranted exercise of discretion." [1]

■ This language, of course, is nearly identical to that of the Rhode Island Administrative Procedures Act (APA), G.L.1956 § 42–35–15. Under the APA this Court reviews deferentially the conclusions of the factfinder in an administrative proceeding. "We do not weigh the evidence * * * we merely search for *any* legally competent evidence that supports the decision under review." *Berberian v. Department of Employ-*

*ment Security*, 414 A.2d 480, 482 (R.I.1980). (Emphasis added.) It should be emphasized that review of the director's findings of fact by the Appellate Division is even more deferential than its review of findings of fact made by a trial judge of the Workers' Compensation Court. This statute completely precludes substitution of judgment or de novo factfinding by the reviewing tribunal.

■ Workers' Compensation Court procedure is set forth in chapter 35 of title 28. The General Assembly's 1992 amendment (P.L.1992, ch. 31) to § 28–35–28, "Appeal to appellate division," unambiguously prescribed the standard by which the Appellate Division was constrained to evaluate the director's findings in the instant case:

"(b) The findings of the trial judge on factual matters shall be final unless an appellate panel finds them to be clearly erroneous." Poisson's steadfast references to de novo review notwithstanding, absent a finding by the Appellate Division that the director was clearly wrong, his or her factual determinations and resolutions of credibility are conclusive. *See American Hoechst Corp. v. Carr*, 621 A.2d 710, 712 (R.I.1993).

## ANALYSIS

Section 28–33–47 entitled "Reinstatement of injured worker," governs the rights of an injured employee covered under the act to be reinstated to his or her former position:

"(a) A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement * * *.

" * * * *

"(c) Notwithstanding subsection (a):

(1) The right to reinstatement to the worker's former position under this section terminates upon any of the following:

* * *

(iv) The worker's refusal of a bona fide offer from the employer of light-duty em-

---

1. A 1995 amendment to this section redesignated the subdivisions within the section. P.L.1995, ch. 44, § 2. We shall refer to the subdivisions as they are designated presently.

ployment * * * prior to reaching maximum medical improvement."[2]

Thus the dispositive issue in this case can be succinctly stated. First, did Comtec's assignment of Poisson to core cutting on June 18, 1993, constitute a bona fide offer of light-duty employment suitable for Poisson, and, if so, did his leaving work on that date constitute a refusal so that his right to reinstatement under the statute was effectively foreclosed?[3]

The director in his written decision concluded that

"[a]lthough conflicting testimony exists with regard to whether or not the employee made verbal complaints in performing the core cutting task, the evidence is uncontradicted that this light-duty function had been suitable and performed by this employee during previous returns to work."

The trial judge of the Workers' Compensation Court reviewing the director's decision recognized the limited and deferential scrutiny to be applied to the director's findings of fact:

"This Court is satisfied that the director's credibility determinations and findings of fact are *fully supported by the record.* This tribunal is consequently powerless to disturb such findings." (Emphasis added.)

In vacating the director's decision, the Appellate Division concluded that he had "overlooked or misconceived material probative. evidence." Specifically the Appellate Division premised its decision on the basis that

"no evidence was presented" by means of which the director could have found that the employee was physically capable of cutting cores on June 18, 1993. With this conclusion and the inherent requirement it weaves into an otherwise unambiguous statute, we disagree.

Had the Legislature deemed it necessary to insert into the statute a requirement that an employer present expert medical testimony that at the precise time an offer of light-duty work is tendered by the employer the employee was physically capable of performing that assignment, the Legislature could have done so. Our careful review of the statutory language and our prior decisions in interpretation thereof reveal no such rigid requirement. *See Worcester Textile v. McIntosh,* 593 A.2d 70, 73 (R.I.1991) (recognizing that medical evidence need not address employee's physical capability to perform the particular job offered but rather the capacity of that employee for work-related activity).

Although we agree that there was not an overwhelming amount of medical evidence before the director, we are of the opinion that sufficient legally competent evidence existed to decide whether Comtec's light-duty assignment of core cutting constituted an activity congruent with Comtec's obligations under § 28–33–47. The director had before him medical notes or reports from two physicians who purportedly treated Poisson on, or immediately before or after, June 18, 1993. Doctor Hayes, before the week of June 16, had examined Poisson and restricted his em-

---

**2.** General Laws 1956 § 28–29–2(8) defines "Maximum medical improvement" as:
"a point in time when any medically determinable physical or mental impairment as a result of injury has become stable and when no further treatment is reasonably expected to materially improve the condition."

**3.** In his brief Poisson argues that the director was constrained to look to § 28–29–2(10) which defines "Suitable alternative employment," in order to determine whether Comtec's bona fide offer of light duty under G.L.1956 § 28–33–47 was "suitable" for him. The director concluded that had the Legislature intended the right to reinstatement to terminate only upon an offer of suitable alternative employment, it would have specifically stated so within the reinstatement statute, § 28–33–47. The trial judge of the

Workers' Compensation Court affirmed, finding that the process pursuant to the "Suitable alternative employment" statute, § 28–33–18.2, begins *upon an offer of employment by the employer* and is not applicable to these facts; whereas under § 28–33–47, "Reinstatement of injured worker," the process begins *upon an injured worker's demand for reinstatement.* "The general legislative intent in both sections is clearly to return injured workers * * * to employment suited to their diminished capacity. The legislature, however, has chosen two roads to accomplish the desired result." The Appellate Division did not reach this issue in its analysis. We likewise need not address this issue as the operative facts in the instant case clearly come within the light-duty prong of the reinstatement statute.

ployment to light duty. Poisson in fact performed a variety of such light-duty assignments including core cutting. According to Dr. Hayes, Poisson could engage in light-duty work that did not require *prolonged* sitting or standing. Poisson presented another note from Dr. Hayes on June 16, 1993, stating that Poisson had been totally incapacitated for the previous two weeks through June 16, 1993. Thereafter Poisson presumably either was capable of light-duty work under the same restrictions as before or, as Dwyer testified Poisson had claimed to be, was "fit and able" to resume his usual position that required the lifting of large paper rolls.

The director also had before him additional medical evidence in the form of a medical note from Francis A. Ramella, D.C. (Dr. Ramella), dated June 22, 1993, indicating that Poisson had been "totally incapacitated" from *June 17, 1993* (the day before his return to work), to July 6, 1993. The director, however, exercising his factfinding discretion, chose not to credit Dr. Ramella's assertion:

> "[T]his Department questions the reliability of the June 22, 1993 medical note from Dr. Ramella which backdates the employee's total incapacity to begin the same day the employee demanded to return to his regular position."

Whereas Poisson argued in his brief and again at oral argument that the director made no credibility determinations entitled to deferential review, the above-quoted language clearly establishes that the director made at least two crucial credibility judgments. First, the director's choice of words reveals beyond doubt that he considered Dr. Ramella's postdated diagnosis unworthy of belief. Second, inherent in this statement, the director believed Comtec's witness that Poisson reported for work on June 16, 1993, proclaiming himself ready, willing, and able to resume his normal duties as a pressman. A fortiori the director must have dismissed Poisson's insistence to the contrary that no such conversation took place. As the factfinder it was within the purview of the director to evaluate the evidence before him and to accept or reject the testimony of the witnesses in whole or in part. *See Quintana,*

511 A.2d at 295. Also the director apparently concluded, on the basis of the testimony and other evidence before him, that Poisson did not voice a physical complaint to the assignment of core cutting on June 18, 1993, but rather simply did not "want to cut cores."

The Appellate Division, while finding "no evidence" to support the director's decision, concluded that the director had erred by not relying on the medical note of Dr. Ramella. In the opinion of the Appellate Division, Dr. Ramella's note was the *only* competent relevant evidence addressing the dispositive issue of Poisson's ability to perform core cutting on June 18, 1993. The Appellate Division found that when uncontradicted medical evidence is presented, the court is bound to accept it "unless it is inherently improbable or contradicted by extraneous facts." Furthermore the Appellate Division found that Dr. Ramella's note was consistent with the previous medical notes of Dr. Hayes such that "two medical expert witnesses independently arrived at similar corroborating conclusions." With this analysis we respectfully disagree. First, the director clearly found that Dr. Ramella's "expert" opinion *was* contradicted by "extraneous facts"—most notably the fact, as found by the director, that Poisson showed up for work on June 16 and proclaimed himself able to return to his job as a pressman. Second, the opinions of Doctors Hayes and Ramella could have been just as persuasively interpreted to be similarly corroborative had Dr. Ramella concluded that Poisson was fit as a fiddle. Simply put, the Appellate Division's position was that Dr. Ramella's note could not be ignored. However, we have previously held that

> "[p]ositive, uncontradicted evidence * * * may be rejected if it contains inherent improbabilities or contradictions that alone or in connection with other circumstances tend to contradict it. Such testimony may also be disregarded on credibility grounds as long as the factfinder clearly but briefly states the reasons for rejecting the witness's testimony." *Quintana,* 511 A.2d at 296 (quoting *Hughes v. Saco Casting Co.,* 443 A.2d 1264, 1266 (R.I.1982)).

What proved more convincing to the director, apparently, was the factual context against which the medical evidence was juxtaposed. As discussed above, the director clearly did not believe Dr. Ramella's note declaring Poisson totally incapacitated on the same date Poisson tendered his services—whether in a full-duty or a light-duty capacity—in *his* bid to return to work on June 18, 1993.[4] A note from a physician does not have such talismanic effect as to be immune from rejection if the factfinder determines that it is inherently improbable in the light of the totality of the evidence.

Poisson failed to adduce any *credible* evidence that he was physically incapable of performing the light-duty assignment of core cutting as was his burden in the first instance. *Cf. Quintana*, 511 A.2d at 295 (explaining that employee seeking compensation benefits has burden of producing "'credible evidence of probative force' to support his or her petition"). The director was faced with the following evidence upon which he based his decision. Poisson, according to the June 16 medical note from Dr. Hayes, was unable to work from June 4 through June 16, 1993. Poisson testified that while under Dr. Hayes's orders of restricted work assignment in May and June, he performed core cutting on three or four different occasions. He also testified that such activity pained him and that he reported this fact to his superiors. Dwyer testified that no such complaints were forthcoming from Poisson regarding core cutting or, for that matter, any of the other light-duty tasks he was assigned. Moreover, Dwyer's uncontradicted testimony was that Comtec accommodated Poisson according to the restrictions placed upon him by Dr. Hayes; Poisson was instructed to feel free to do, or not to do, whatever was necessary (bend, stretch, walk, sit ... ) for him to perform the light-duty task assigned comfortably.

Having accorded the director's decision the deference to which it is entitled in respect to factual and credibility issues, we are compelled to reverse the Appellate Division's decree and reinstate the director's decision. The Appellate Division erred as a matter of law by substituting its own judgment for that of the director on factual issues entitled to deference. The applicable statutory and case law and our interpretation thereof leave no doubt that the province of the factfinder (in this case the director) is not to be invaded when any legally competent evidence exists in the record to support his or her conclusions. This requirement must be observed notwithstanding the reviewing tribunal's conclusions to the contrary. *See, e.g., DiPrete v. Morsilli*, 635 A.2d 1155, 1162 (R.I.1994) (explaining review under APA). As a result, we are of the opinion that the director's decision was supported by sufficient legally competent evidence—including the restrictions set forth by Dr. Hayes, the accommodations provided by Comtec, Poisson's prior accomplishments as a core cutter, Poisson's own statement of June 16, 1993, and Poisson's reporting for work and demanding reinstatement on June 18, 1993—thus the director had an appropriate evidentiary basis to conclude that Poisson refused Comtec's bona fide offer of suitable light-duty employment, thus terminating his right to reinstatement.

For the foregoing reasons the employer's petition for certiorari is granted. The decree of the Appellate Division is quashed. The papers in the case may be remanded to the Workers' Compensation Court with our decision endorsed thereon with directions to reinstate the director's decision.

---

4. Such was the director's concern regarding the propriety of Dr. Ramella's actions that he sent a letter dated February 22, 1994, to the Rhode Island Workers' Compensation Fraud Unit, requesting a formal review of the matter.