DECISION
This is an appeal from a decision of the Rhode Island Department of Human Services (DHS, The Agency, or appellee) finding that the appellant, Mrs. Lorraine Woods (appellant or Woods), who was previously a beneficiary of food stamps and Family Independence Program (FIP) benefits, failed to report and/or underreported income to her DHS caseworker, resulting in overpayments of benefits by DHS to her. Subsequently, DHS ordered the appellant to reimburse it for the entire disputed amount. Jurisdiction is pursuant to G.L 1956 § 42-35-15.
 FACTS/TRAVEL
The appellant, a onetime recipient of FIP and food stamp benefits, was informed by DHS in a January 18, 2002 letter that she had received overpayments of $1,844 in food stamps and $2,734 in FIP benefits. Specifically, DHS alleged that from October 2000 to December 2001 the appellant did not report or underreported income to her case worker, resulting in overpayments of FIP benefits. Similarly, from September 2000 to December 2001, the appellant failed to report or underreported income, resulting in overpayments of food stamp benefits. Additionally, DHS acknowledged that at least some of the overpayments were due to Agency error.
On January 24, 2002, the appellant, pursuant to G.L. 1956 § 42-35-9, 1 Code of Rhode Island Regulations (CRIR) 17, Rule 15020 001 at 54, etseq., and, 1 CRIR 20, Rule 15020 at 186, et seq., requested a hearing to appeal the DHS decision, and on January 26, 2001, the Agency held a public hearing on the matter. The appellant and her husband testified that they had submitted the proper employment documentation to DHS as requested by their caseworker. Thus, they contended any mistaken distributions made were the fault of DHS officials, and they (the appellant and her husband) should not be ordered to make restitution to DHS. DHS maintained that contributing factors to the overpayments were underreported, late reported, and non-reported income by the appellant and her husband. Additionally, despite DHS' concession that at least part of the overpayments resulted from its clerical errors, the Agency testified that, pursuant to state law, DHS rules required it to collect the full amount of the overpayments from the appellant regardless of fault.
On February 28, 2002, the Hearing Officer, after listening to testimony from both parties and examining the evidence before him, found that the appellant was at least partially to blame for the overpayments, and that in any event, fault was irrelevant to the issue of recovery by DHS; accordingly, he ordered Woods to repay the entire disputed amounts to DHS. From that decision, the appellant appeals to this Court.
The appellant first argues on appeal that DHS failed to meet its burden in demonstrating the existence of and the amount of overpayments. The appellant also contends that even if she were responsible for remitting the disputed amounts to DHS, the Agency failed to calculate the overpayments in accordance with federal and state law as well as their own regulations. The appellee maintains that Woods failed to report and/or underreported income to her DHS caseworker and must repay the disputed amounts. DHS argues that it did calculate the overpayments in accordance with federal and state law, as well as its own regulations.
 STANDARD OF REVIEW
Aggrieved parties may appeal a final decision of DHS to this Court pursuant to G.L. 1956 § 42-35-15, which provides in pertinent part:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) in violation of constitutional or statutory provisions;
 (2) in excess of the statutory authority of the agency;
 (3) made upon unlawful procedure;
 (4) affected by other error of law;
 (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion." G.L. 1956 § 42-35-15.
In accordance with G.L. 1956 § 42-35-15, this Court may not substitute its judgment for that of the agency under review regarding the credibility of witnesses and/or the weight of the evidence concerning issues of fact. Costa v. Registrar of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988). The Court must confine its review to the record of the administrative hearing to determine if any "legally competent evidence" exists to support the agency's decision. Rhode Island Temps, Inc. v.Dept. of Labor and Training, 749 A.2d 1121 (R.I. 2000) (defining legally competent evidence as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance). Nevertheless, the Court may vacate a decision of the Agency if it is "clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record." Costa at 1309.
 BURDEN OF PROOF AND SUFFICIENCY OF THE EVIDENCE
The appellant essentially argues that DHS failed to overcome its required burdens of production and persuasion regarding the existence and amount of overpayments to her. DHS argues that if it did carry the burdens of production and persuasion on these issues, it provided the Hearing Officer with ample evidence of overpayments as a result of the Woodses' underreported, late reported, and non-reported income.
Pursuant to DHS regulations, a claim for food stamp overpayments is defined in pertinent part as "an amount owed because of: [b]enefits that are overpaid." 1 CRIR 20, Rule 15020 017 at 165 (2002). DHS enumerates three distinct methods for establishing claims against households, two of which are applicable in this case. One method, which applies to inadvertent household errors, states that an "inadvertent household error is any claim for an overpayment resulting from a misunderstanding or unintended error on the part of the household. This includes instances when the household unintentionally received benefits, or more benefits than it was entitled to receive, pending a fair hearing decision." Id.
The other method, which refers to agency error, states that such error is characterized as "any claim . . . for an overpayment caused by the agency's action or failure to take action." Id. Accordingly, the pertinent DHS regulation providing for the collection of overpayments states that:
 "The agency must initiate collection action against the household of all inadvertent household or agency error claim referrals unless the claim is collected through offset, or one of the following conditions applies:
 The amount of the claim referral is less than one hundred twenty-five dollars ($125), and the claim cannot be recovered by reducing the household allotment. This threshold does NOT apply for overpayments discovered through the quality control system.
 The agency has documentation which shows that the household cannot be located." Id at 170.
Similarly, DHS regulations define overpayments of FIP benefits as "a cash benefit issued to or for an assistance unit for a payment month in an amount exceeding the amount for which that unit was eligible." 1 CRIR 18, Rule 15020 002 at 193. Like the rules for the food stamp program, the FIP rules provide that the agency's Collections, Claims and Recovery/ Fraud Unit (CCR/Fraud Unit) shall undertake reasonable efforts to collect overpayments. Id.
It is well-settled that in formal or informal adjudications modeled on the Federal Administrative Procedures Act (APA), the initial burdens of production and persuasion rest with the moving party — in this case, DHS. 2 Richard J. Pierce, Administrative Law Treatise § 10.7 at 759 (2002) (citing Director, OWCP v. Greenwich Collieries, 512 U.S. 267
(1994) where a six-justice majority held that the APA imposes both the burden of production and the burden of persuasion on the proponent of a rule or order); see also U.S. v. Taghizadeh, 98 F. Supp. 2d 1269, 1273 (D. Kan 2000) (agreeing with the Eighth Circuit's statement that where "the statute does not designate which party bears the burden of proof to establish the fact of overpayment . . . the government . . . must demonstrate that the claimant was not entitled to the . . . funds"). Often, successful showings are made by a preponderance of the evidence. Pierce, Administrative Law Treatise § 10.7 at 763-766.
As to the sufficiency of the evidence presented by DHS to the Hearing Officer, G.L. 1956 § 42-35-12 directs that a Hearing Officer shall make the proper findings of fact and conclusions of law; in effect conducting a de novo review of the evidence before him/her. The Agency's regulations, meanwhile, do not specify the form that such materials must assume. Generally, "[o]nly information bearing directly on the issue under review and the supporting policy may be introduced from agency records." 1 CRIR 17, Rule 15020 001 at 65. Specifically, in the case of food stamps, the Hearing Officer "requests, receives and makes part of the record all evidence determined necessary to decide issue(s) being heard." 1 CRIR 20, Rule 15020 017 at 189.[1]
In the present case, the appellant argues that the evidence of unreported and underreported income presented by DHS was insufficient to demonstrate overpayments of benefits. Specifically, the appellant contends that "[t]here is no evidence to show that the income figures on their [the Woodses'] pay-stubs and used by DHS to calculate their benefits were lower than — or even different from — the income reported by the employers." Appellant's Brief at 6. Ultimately, the appellant argues that the Hearing Officer simply took the representations of the DHS collections unit regarding overpayments at face value, without conducting a true de novo review of their findings. DHS contends that the evidence it provided to the Hearing Officer was sufficient to meet its burdens of production and persuasion.
The Hearing Officer was presented with the DHS computer database log entries detailing the caseworker's contact with the appellant over several months. Included in these printouts are several notations by the caseworker detailing late reporting of income by the appellant. Specifically, one log entry notes that the "client did not send pay stubs with [the] report at first, and was notified to do so by mail," while a subsequent handwritten notation indicated that at least two (2) months worth of the plaintiff's pay stubs were reported late. DHS Case Log, of December 13, 2000; DHS Case Log, unknown date.[2] Pursuant to DHS regulations, these logs were forwarded to the Agency's CCR/Fraud Unit, which then itemized and recorded each discrepancy regarding what benefits the appellant should have received and what she actually received onto a worksheet. 1 CRIR 20, Rule 15020 017 at 169; 1 CRIR 18, Rule 15020 002 at 197. These worksheets were also provided to the Hearing Officer, as were the Notice of Overpayment of FIP Benefits Letter and the Demand Letter for Overpayment of Food Stamp Benefits, which also informed the appellant of her right to discuss the determination of overpayments with CCR/Fraud Unit officials.[3] Coupled with the income data was testimony from CCR/Fraud Unit officials indicating that they had "looked . . . in the Agency computer system and . . . found that the income that was reflected in these documents (known as AP-50B worksheets, which were sent by the CCR/Fraud Unit to the appellant's various employers to indicate the respective months that the appellant had worked and the amounts earned) was not reflected in the Agency's computer system in the computation of their benefit." Tr. at 5.
In addition to the testimony of the CCR/Fraud Unit officials, the Hearing Officer also questioned the appellant at length regarding unreported/underreported income. Tr. at 14-16. Specifically, when directed to comment on an AP-50B form submitted by a previous employer and asked "if [that] seem[s] to be an accurate representation of your wages?" the appellant responded, "I would say it's probably accurate."Tr. at 15. The record reflects that the evidence before the Hearing Officer did constitute "relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and mean[ing] an amount more than a scintilla but less than a preponderance." Rhode Island Temps.Inc., at 1121. While every document indicating an overpayment of FIP and food stamp benefits may not have been before the Hearing Officer, it is apparent that he had reliable, probative, and substantial evidence to find that the appellant's unreported/underreported income contributed to overpayments of benefits by DHS. Consequently, this Court finds that in affirming the Agency's ruling regarding the existence of overpayments, the Hearing Officer's decision was not in excess of statutory authority, nor was it arbitrary or capricious or characterized by an abuse of discretion.
 CALCULATION OF BENEFITS
The appellant next contends that regardless of what evidence DHS presented at the hearing, the overpayments of FIP and food stamp benefits were not correctly calculated. DHS maintains that such calculations were done in accordance with federal and state law, as well as its own regulations.
An integral part of calculating FIP and food stamp benefits for potential recipients is a determination of those individuals' monthly income. The FIP regulations define income as
 "all of the money, goods, or services received or actually available to any member of the family. Income is considered available both when actually available or when the applicant/recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance. It must be under the control of the individual during the period for which need is being determined or can be available, if action is taken by the individual to obtain it." 1 CRIR 18, Rule 15020 002 at 131.
For purposes of issuing food stamps, however, the Agency defines income as "all income from whatever source . . . . The income considered is that received over the period of certification. As this is generally a future period, the income considered is usually that anticipated by the household." 1 CRIR 20, Rule 15020 017 at 84. Accordingly, DHS regulations set forth lengthy provisions governing the precise calculation of FIP and food stamp benefits. 1 CRIR 18, Rule 15020 002 at 131 et seq; 1 CRIR 20, Rule 15020 017 at 104 et seq. In calculating an over-issuance of food stamps, the Agency must determine the initial month of over-issuance. Thus, in cases of either Agency error or inadvertent household error, the initial month of over-issuance will generally be
 "the first month the change would have been effective had it (the income) been reported in a timely manner . . . [e]xample: [t]he household received [benefits] on July 25th but, due to a misunderstanding, did not report to the agency until August 18th. The first month of over-issuance would be September (which is the month the change would have been effective.)" 1 CRIR 20, Rule 15020 017 at 167.
Meanwhile, the FIP regulations provide somewhat generally that
 "an overpayment is defined as a cash benefit issued to or for an assistance unit for the payment month in an amount exceeding the amount for which that unit was eligible . . . to determine the net overpayment amount, the gross overpayment must be reduced by the amount of any child support collected and retained by the Department of Administration, Division of Taxation — Child Support Enforcement over and above the payment the recipient should have received . . . ." 1 CRIR 18, Rule 15020 002 at 193.
In the present case, the appellant contends that "for purposes of earnings, the [relevant pay date] is the paycheck date (not "weeks worked" or "pay period"). Appellant's Brief at 7-8. Thus, since DHS did not present any evidence of paycheck dates, the record "[was] devoid of evidence showing date(s) the Woods received income . . . ." Id. at 8. The appellant, however, does not refer to any DHS regulation requiring paycheck dates to be dispositive. Rather, the record reflects that the combination of the CCR/Fraud Unit's testimony,[4] the appellant's updated monthly income amounts as reported on the AP-50B worksheets, and the appellant's own admissions regarding the probable accuracy of those monthly income amounts provided ample evidence of income received for most of the disputed time period. See discussion supra pp. 6-8; see alsoPawtucket Power Assoc. v. City of Pawtucket, 622 A.2d 452, 457 (R.I. 1993) (holding that courts should properly defer to an administrative agency's interpretation of its own regulations).
However, in addition to this general averment, the appellant directs this Court's attention to two specific instances of alleged miscalculations. The appellant argues that DHS charged her for overpayments for September 2000 and June 2001 in contravention of its own regulation regarding the determination of the initial month of over-issuance of food stamps. The record reflects that the appellant was indeed paid by her employer, Berkshire Place, on August 24 and August 31, 2000 and that these earnings appear to have been reported to her DHS caseworker promptly. DHS Case Log of September 1, 2000; See 1 CRIR 20, Rule 15020 017 at 167. The record also shows that in May 2001 both the appellant and her husband were unemployed, yet they were charged for an over issuance for June 2001. Woods' husband received income in June 2001 but Woods herself did not. Exhibits 6 and 9. Thus, in these particular instances, DHS's determination of the initial month of over-issuance may have been in violation of statutory provisions charging the appellant for over-issuances it otherwise should not have. Thus, DHS's determination for these specific instances may have been clearly erroneous. See 1 CRIR 20, Rule 15020 017 at 167.
Accordingly, after a review of the entire record, this Court affirms that portion of the Hearing Officer's decision upholding DHS's calculations of over-issuances, not inclusive of the months of September 2000 and June 2001, as it is supported by the reliable, probative and substantial evidence of the whole record. This Court, however, remands the decision to the Hearing Officer with instructions to reconsider, and if necessary, recalculate and thereby determine, whether there were alleged over-issuances for September 2000 and June 2001 and whether they were supported by the probative evidence of record. This Court will retain jurisdiction.
[1] The FIP program, having no analogous provision, is subject to the general standard cited at 1 CRIR 17, Rule 15020 001 at 65.
[2] The handwritten notation was made by CCR/Fraud Unit caseworker Marion Fath in her attempt to verify all of the appellant's unreported and underreported income. Tr. at 9.
[3] DHS issued the Notice of Overpayment Letter and the Demand Letter for Overpayment pursuant to 1 CRIR 20, Rule 15020 017 at 171 and 1 CRIR 18, Rule 15020 002 at 198 respectively.
[4] See the recent case of State v. Cluley, No. 01-569-M.P., slip op. at 9 (R.I. filed November 12, 2002), holding that the Rhode Island Department of Health officials' testimony regarding their interpretation and application of an ambiguous Breathalyzer regulation should be given deference by reviewing courts.