[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before the Court are consolidated appeals from a decision of the Division of Labor Standards, Department of Labor and Training, which awarded Ronald C. Garabedian $5,703.49 in gross wages pursuant to G.L. 1956 § 28-14-4 and assessed an administrative fee against Japonica Partners, pursuant to §28-14-19, in the amount of $1,425.87. Both Japonica Partners and Ronald C. Garabedian seek review of the decision. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
As defined in the Rhode Island Payment of Wages Act, Japonica Partners (Japonica) is an employer, and Ronald C. Garabedian (Garabedian) is an employee. See G.L. 1956 § 28-7-3. The Division of Labor Standards, Department of Labor and Training (Department) is an administrative agency. Id. Garabedian was employed with Japonica from June 1, 1995 to July 31, 1998. Thereafter, Garabedian filed a claim against Japonica for unpaid wages pursuant to § 28-14-4.
On December 1, 1999, the Department held a hearing concerning Garabedian's claim against Japonica. Garabedian testified on his own behalf, and Japonica's General Counsel, S. Michael Levin (Levin), testified for Japonica. The evidence presented at the hearing revealed the following background facts. Garabedian commenced his employment with Japonica in the beginning of June 1995. His job title was treasurer/controller. Garabedian was responsible for managing the assets of the company, and he was also familiar with the company's payroll policies. As of 1995, Garabedian worked five days a week with a yearly salary of $90,000.
Garabedian's 1997 Annual Review reflects that his salary, effective January 1, 1998, was increased from $129,000 to $144,000. Additionally, the number of days he was expected to work was reduced to three days per week. In May of 1998, Garabedian's work week was reduced again. As of May 1, 1998, he was expected to work just one to two days per week. His salary, however, remained at $144,000 per year.
In July of 1998, Japonica initiated discussions with Garabedian concerning a proposed transition whereby Garabedian would become an outside vendor or consultant to Japonica instead of remaining as a salaried employee. The parties were unable to reach an agreement relative to a future business relationship, and Garabedian ceased to work for Japonica. Garabedian maintained that he was terminated while Japonica took the position that Garabedian had resigned.
Garabedian testified that Japonica refused to compensate him for unused vacation time and for ten days of arrearage pay. In regard to the arrearage pay claim, the record revealed that when Garabedian joined the company in 1995, employees were paid biweekly. At that time, there was a two week hold back period called a pay arrearage for full-time employees. Thus, a full-time employee who commenced working for the company at the beginning of January would receive his or her first pay check at the end of January, after working for four weeks. The check issued at the end of the fourth week constituted compensation for the work performed on the first and second weeks of employment. As further example of this payroll system, the same employee would be paid in mid February for the work that he or she performed in the third and fourth weeks of January and would be paid at the end of February for the work performed in the first and second weeks of February. Under this payroll system, Japonica remained two weeks in arrears for the purposes of payment of salary.
In March of 1997, Japonica transitioned to a monthly payroll system wherein each employee received a monthly check at the end of the month for the work performed in that month. When Japonica switched to the monthly payroll system, it did not compensate its full-time employees for their original ten-day pay arrearage. As to the employees who had been subject to the pay arrearage, Japonica remained two weeks in arrears. Garabedian testified that he commenced working at Japonica in 1995 and was subject to the ten-day pay arrearage. He further testified that Japonica never paid him for the arrearage days.
In support of his vacation pay claim, Garabedian testified and presented documentary evidence demonstrating that as of the end of May 1998, he had accrued 9.5 days of vacation. Japonica's vacation policy provided that an associate employed for two years would accrue 1.25 vacation days per month for a total of 15 days per year. On March 25, 1998, Levin sent Garabedian an e-mail informing him that his vacation accrual rate had been adjusted down from 1.25 days per month to .75 day per month because Garabedian had been placed on a three-day work schedule. The e-mail confirmed that "as of the end of May [1998], assuming no additional leave taken before then, you will have accrued 9.5 days of unused leave." Garabedian testified that from January 1, 1998, to July 31, 1998, he took a total of two days of vacation.
In late April of 1998, when Japonica reduced Garabedian's schedule down to one to two days per week, Garabedian was informed, by e-mail, that his vacation accrual "will be adjusted in line with change in schedule." At hearing, Levin testified that when Garabedian was reduced to a one or two-day work week, he was no longer accruing vacation leave. Garabedian was not informed verbally or in writing that the imposition of a short work week would result in his out-of-office days being charged against his accrued vacation time.
Garabedian testified to Japonica's payroll practice relative to compensation for pay arrearage and accrued, unused vacation days when an employee left the company. He explained that Japonica would add the ten arrearage days to the number of the employee's accrued, unused vacation days. Japonica would then compensate the employee for the total number of outstanding arrearage and unused vacation days based on the employee's daily salary at the time of termination of employment. Garabedian testified to two examples in which employees who left the company were paid for their arrearage and unused vacation days in this manner. Garabedian also offered a document reflecting this practice; however, the document was not accepted by the hearing officer because the name of the employee involved was not redacted. The hearing officer advised Garabedian that he would accept the document if Japonica presented contrary evidence. Japonica did not present evidence to contradict Garabedian's testimony that upon their separation from Japonica, other employees were paid for their accrued vacation and arrearage days based on their daily rate of salary at the time of separation. Garabedian acknowledged that Japonica paid him in full for his salary through July 31, 1998. He testified, however, that Japonica refused to pay him for his ten days of arrearage and for his accrued, unused vacation time.
On February 18, 2000, the Department issued a decision which awarded gross unpaid wages to Garabedian in the amount of $5,703.49 and assessed an administrative fee against Japonica for $1,425.87.[1]
In its written decision, the Department made specific factual findings that Garabedian had been subject to a ten-day pay arrearage. In making this finding, the Department indicated that it relied upon the testimony of Garabedian, as well as two documents drafted by Japonica which referred to a two-week pay arrearage. The Department noted that Japonica did not present any evidence demonstrating that Garabedian had been made whole relative to the arrearage amount.
In calculating the amount of the arrearage wages due to Garabedian, the Department suggested that there was no evidence in the record indicating the time period that Garabedian would have been entitled to be compensated for the arrearage amount. The Department concluded that Garabedian's pay rate for the year 1995 should be utilized in determining the amount due "since it is evident that [wages] were not paid for his first two weeks of employment." Having found that Garabedian was entitled to ten days of arrearage wages at his 1995 rate of $375 per day, the Department awarded $3,750 to Garabedian in connection with his claim of unpaid arrearage wages.
Noting that the vacation issue was "somewhat complicated," the Department concluded that Japonica owed Garabedian wages associated with accrued, unused vacation days. Although the Department determined that Garabedian should be compensated for his unused vacation time, it found that "it would be unfair and inappropriate for him to accrue vacation at the same rate as an employee, who worked normal number [sic] of days per month." Relying on Japonica's vacation accrual policy and its documentation that Garabedian worked 56.34% of the available work days from October 1997 to July 31, 1998, the Department fashioned its own calculation of the number of vacation days it deemed to be equitable for Garabedian to have accrued. The Department reasoned as follows:
 "The actual days that [Garabedian] worked must be computed into the formula for accrued vacation so as to make it more fair and reasonable. Based on [Japonica's] work schedule submission, [Garabedian] actually worked about 56.34% of the available days from October 1997 through July 31, 1998. Assuming he would accrue that same percentage of vacation days, it would appear that the accrued vacation days would be 8.5 days, and by his own testimony he utilized five of those days; therefore, the company would owe him 3.5 vacation days at the time of his termination."
In arriving at the amount due for the unpaid vacation days, the Department calculated that the average daily salary for an employee who worked five days per week with a monthly salary of $12,000, to be $558.14. Accordingly, the Department awarded Garabedian $1,953.49, for the 3.5 days of vacation time it deemed due to Garabedian.
Both Garabedian and Japonica have appealed the Department's decision. Garabedian disputes the Department's method of calculating his wage award. He asserts, on appeal, that he is entitled to $32,250 in unpaid wages, interest on that amount and attorney's fees. Japonica contends that Garabedian was paid in full for all wages due. Japonica asks the Court to reverse the Department's award to Garabedian and its assessment of an administrative fee against Japonica.
 Standard of Review
Rhode Island General Laws § 42-35-15(g) guides this Court in its review of the Rhode Island State Labor Relations Board's decision and provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of the administrative findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of [sic] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section of the Administrative Procedures Act precludes a reviewing court from substituting its judgment for that of an agency in regard to the credibility of witnesses or the weight of the evidence concerning questions of fact. Kachanis v. Bd. ofReview, Dep't. of Employment and Training, 638 A.2d 553, 555 (R.I. 1994); Costa v. Registry of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of InterestCommission, 509 A.2d 453, 458 (R.I. 1986). Accordingly, this Court "must uphold the agency's conclusions when they are supported by any legally competent evidence in the record."Rocha v. State Public Utilities Comm., 694 A.2d 722, 725 (R.I. 1997); Rhode Island Temps, Inc. v. Dep't. of Labor andTraining, 749 A.2d 1121, 1124 (R.I. 2000); InterstateNavigation Co. d/b/a The Block Island Ferry v. Div. of PublicUtilities Carriers of R.I., 824 A.2d 1282, 1286 (R.I. 2003). This is true even in cases where the Court, after reviewing the certified record and evidence, "might be inclined to view the evidence differently" than the agency. Barrington Sch. Comm. v.Rhode Island State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992).
This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 272 (R.I. 1981) (even if the court were to conclude that one witness's testimony was improper, it would reverse the agency's conclusions only if said testimony were the sole basis of the agency's finding); Bunch v. Bd. ofReview, Rhode Island Dep't. Employment and Training,690 A.2d 335, 337 (R.I. 1997). "Legally competent evidence is `relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.' [Rhode Island Temps, Inc. v.Dep't. of Labor and Training, 749 A.2d 1121, 1125 (R.I. 2000)] (quoting Center for Behavioral Health, Rhode Island, Inc. v.Barros, 710 A.2d 680, 684 (R.I. 1998))." Arnold v. R.I. Dep't.of Labor, 822 A.2d 164, 167 (R.I. 2003); Ryan Iron Works, Inc.v. NLRB, 257 F.3d 1, 7 (1st. Cir. 2001). Questions of law are "not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." NarragansettWire Co. v. Norberg, 118 R.I. 596, 607; 376 A.2d 1, 7 (1977);Rhode Island Temps, Inc. v. Dep't. of Labor and Training,749 A.2d 1121, 1125 (R.I. 2000) (court reviews all questions of law despite its "deference to the administrative process"). The Court may modify a decision of the board if, inter alia, the findings are "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record" or otherwise affected by legal error. Section 42-35-15 (g)(5).
 PAYMENT OF WAGES ACT
Under Rhode Island Law, "[w]henever an employer separates an employee from the payroll, the unpaid wages or compensation of the employee shall become due on the next regular payday and payable at the usual place of payment." Section 28-14-4(a). The term, "wages," under the Payment of Wages Act means "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, commission basis, or other method of calculating the amount." Section 24-14-1(4). Rhode Island General Law § 28-14-4(b) requires that "whenever an employee is separated from the payroll of an employer after completing at least one year of service, any vacation pay accrued by . . . company policy . . . shall become wages and payable in full or on a prorated basis with all other due wages on the next regular payday for the employee." Section28-14-4(b); see also Massachusetts v. Morash, 490 U.S. 107, 120, 109 S.Ct. 1668, 1675, 104 L.Ed.2d 98, 112 (1989) (determining that payment of unused vacation time is equivalent to regular wage compensation).
 Arrearage Pay
Japonica argues, in its appeal, that the Department erred by awarding Garabedian ten days of arrearage pay. Japonica asserts the following three arguments: (1) there was no competent evidence on the record to support a finding that Garabedian was owed arrearage pay, (2) the Department erroneously placed the burden of proof upon Japonica relative to the issue of arrearage wages, and (3) the "Department's decision is legally erroneous because any award dating back to 1995 is barred by the three-year statute of limitations contained in R.I. Gen. Laws § 28-14-20."
In his appeal, Garabedian maintains that the Department properly awarded him arrearage pay. He asserts, however, that the Department erred in its calculation of the amount due when it concluded that Garabedian's 1995 salary rate was be utilized to calculate the value of the arrearage wages. Garabedian contends that the evidence on the record would permit just two possible conclusions as follow: either (1) the arrearage pay was due to him in 1997, when Japonica changed to a monthly payroll, and the wages should be valued at his 1997 rate of pay, or (2) the arrearage was due at the end of Garabedian's employment in which case the wages should be valued at his daily salary in 1998.
After careful review, this Court finds that the testimony and documents in the record more than amply support the Department's finding that Japonica owed Garabedian ten days of arrearage wages. Garabedian's sworn testimony on this issue was competent and established that he had been subject to a ten-day pay arrearage for which he has not been compensated to date. Additionally, the record includes documents drafted by Levin which support the conclusion that Garabedian was owed arrearage pay. Petitioner's Exhibit 5 was a document entitled "RCG Transition: Prospective Relationship Meeting Agenda." The document references a two-week pay arrearage and indicates "[w]ill be paid with August payroll." In explaining the context of this document at hearing, Levin testified that "this was a proposal that I was making to him, actually, an agenda, along with some of our positions for discussion. And if he would agree to them, we would sign them, get on with things." Japonica now argues that this document merely constituted "talking points" and does not establish that arrearage pay was owed. The Court, however, finds that this written proposal which included an offer to pay the ten-days arrearage wages constituted competent evidence that Japonica acknowledged Garabedian was entitled to recover such wages. See Hamaker v. Gagnon, 110 R.I. 709,297 A.2d 351 (trial court properly affirmed the Personnel Appeal Board's decision where the record included documents and testimony that supported the Board's findings); see alsoRhode Island Temps, Inc. v. Dep't. of Labor Training,749 A.2d 1121, 1125-1126 (R.I. 2000) (legally competent evidence is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion . . .").
In rendering its decision, the Department properly identified the evidence upon which it relied in finding that Garabedian is entitled to arrearage pay. In addition, the Department noted that Japonica did not present evidence demonstrating that Garabedian had been "made whole" relative to the arrearage amount. On this point, Japonica asserts that the Department erroneously placed the burden of proof upon Japonica.
Contrary to Japonica's assertion, the record clearly reflects that Garabedian met his burden of proving that he is entitled to recover arrearage pay. Far from erroneously placing the burden of proof on Japonica, the Department merely observed that Japonica did not present rebuttal evidence in response to competent evidence and testimony offered by Garabedian which established that he is entitled to ten days of arrearage pay. See Milardov. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981) (court must uphold factual conclusions of administrative agencies unless "they are totally devoid of competent evidentiary support in the record."). Japonica's payroll records, dating back to 1995, if preserved, would have conclusively demonstrated whether Garabedian was owed arrearage wages. Japonica neither produced those relevant payroll documents nor explained their conspicuous absence from the record. In sum, the Department's finding that Japonica owes Garabedian ten days of arrearage wages was supported by reliable, probative, and substantial evidence in the record and must be upheld. Rhode Island Temps, Inc v. Dep't.of Labor and Training, 749 A.2d 1121, 1125 (R.I. 2003).
Both Garabedian and Japonica assert that the Department erred, for different reasons, when it found that the arrearage amount should be determined based on Garabedian's 1995 salary rate. Japonica argues that there is no competent evidence in the record to support a finding that Garabedian was entitled to arrearage pay. Further, Japonica contends that the Department's decision constitutes an award dating back to 1995 and is barred by the three-year statute of limitations set forth in the Payment of Wages Act. Garabadian argues that the evidence in the record requires a finding that his arrearage pay be valued at his 1997 or 1998 salary rate.
In concluding that there was a lack of evidence to establish the time period that Garabedian would be entitled to recover his arrearage pay, the Department erred by overlooking competent, uncontroverted evidence on the record that was directly on point. Specifically, Garabedian testified that when an employee who had been subject to the pay arrearage left the company, he or she would be paid for the arrearage days based on his or her rate of pay at the time of separation. In fact, Garabedian testified to the names of at least two employees who recovered their wage arrearage in this manner. Japonica did not contradict Garabedian's explanation of this payroll practice. The record was, therefore, devoid of evidence to support the Department's utilizing Garabedian's 1995 salary rate to calculate the arrearage pay award.
Japonica's reliance upon the argument that the finding was legally erroneous because it "dated back to 1995" and was therefore barred by the three-year statute of limitations is misplaced. Garabedian's claim for unpaid wages vested in 1998. The record is clear that Garabedian timely filed his claim for unpaid wages within three years of the date Japonica declined to pay him. Had there been evidence on the record that Japonica's practice was to repay the arrearage amount based on the employee's rate of pay at the beginning of their employment, then the Department's finding would have been supported by the evidence and not erroneous or barred by the limitations period.
The Court finds that the Department's calculation of the arrearage pay award due to Garabedian must be modified because it was "clearly erroneous in view of the reliable, probative and substantial evidence on the record." Section 42-35-15(g). Since the evidence in the record reflects that Japonica's practice was to apply the employee's daily salary rate at the time of separation when compensating for arrearage wages, the Department's findings must be modified to provide that Japonica owes Garabedian ten days of arrearage pay based on his 1998 daily salary rate. In 1998, Garabedian was earning $144,000 per year. Accordingly, his daily salary rate was $553.85 and for ten days of arrearage he is owed $5,538.50.[2]
 Vacation Pay
In addressing the Department's award of vacation pay, Japonica argues that the Department erred by creating and imposing a "fair and reasonable" vacation accrual rate that was not supported by the record evidence. Japonica characterizes Garabedian's 84 out-of-office days as "vacation" days and argues that it does not owe Garabedian for unused vacation time wages because the out-of-office days for 1998 were deducted from his accrued vacation days. Japonica further asserts that the Department erred by rejecting the United States Department of Labor Wage and Hour Division opinion letters (DOL Opinion Letters), submitted in support of its right to charge Garabedian's "absences" against his accrued vacation time.
Garabedian urges that the Department was correct in finding that he is entitled to vacation wages but asserts that the Department erred it its calculation of the amount due. Garabedian argues that by the end of July, he had accrued 11.75 vacation days. Since he took two vacation days, he claims entitlement to wages for 9.75 accrued, unused vacation days. In the alternative, he argues that the Department erred by enforcing Japonica's retroactive implementation of a reduced vacation accrual. Accordingly, he maintains that if his vacation accrual rate had remained at 1.25 per month, he would have accrued 12.5 days by the end of July. Relying on his 1997 performance review in which Japonica characterized his increased salary as $1,000 dollars per day of actual work in the office, Garabedian contends that Japonica owes him $1,000 dollars per day for his unused, accrued vacation time.
Upon review of the administrative record, the Court finds that the Department's decision that Garabedian is entitled to compensation for accrued, unused vacation pay was not affected by error of law. The Department did err, however, when it fashioned an accrual rate based on its perception of fairness. The Department, which was required to make findings based on the record evidence, failed to do so. By creating and essentially implementing an equitable accrual rate for Garabedian rather than determining a rate based on the record evidence before it, the Department both abused its discretion and arrived at a conclusion that was clearly erroneous. Barrington Sch. Comm. v. RhodeIsland State Labor Relations Bd., 608 A.2d 1126, 1139 (R.I. 1992) (court properly reversed the Rhode Island State Labor Relations Board's decision where there was no competent evidence on the record to support the board's finding). In light of this error, the award for vacation wages must be modified to conform to the record evidence.
The undisputed evidence in the record revealed that Garabedian had accrued 9.5 days of vacation at the end of May in 1998. Further, he took only two days of vacation; thus, he is entitled to recover compensation for his 7.5 days of accrued, unused vacation days.[3] Since there was "some" testimony from Levin, indicating that Garabedian was not accruing vacation time after May 1998, the record reflects that Garabedian did not accrue any additional vacation time in June or July.[4]Rocha v. State Public Utilities Comm., 694 A.2d 722, 725 (R.I. 1997) (court "must uphold the agency's conclusions when they are supported by any legally competent evidence in the record"). Accordingly, the Court finds that Japonica owes Garabedian 7.5 days of accrued, unused vacation days. Consistent with the undisputed testimony concerning Japonica's practice of paying employees for accrued, unused vacation time at their daily rate of salary upon termination, Garabedian is entitled to $4,153.88 for vacation wages.[5]
Japonica's claim that Garabedian had no accrued vacation days at the end of his employment because his out-of-office days had been permissibly charged against his accrued vacation time is not supported by the administrative record. Levin did not testify or present evidence indicating that Garabedian's absences were considered to be "vacation" days for which Garabedian would be charged. Rather, Levin testified, in essence, that he thought it was "irrational" for Garabedian to request compensation for unused vacation time.[6] Moreover, Garabedian confirmed by his testimony that he was never informed verbally or in writing that his forced out-of-office days would be charged against his accrued vacation time. As there is no record evidence demonstrating that Japonica deducted Garabedian's forced out-of-office days from his accrued vacation time, the Department did not err in rejecting Japonica's claim that the accrued vacation days were permissibly deducted.[7]
The total amount now due to Garabedian for arrearage wages and vacation days is $9,692.38. Having found that Japonica owes Garabedian the sum of $9,692.38, the Court finds that pursuant to § 28-14-19, Japonica must pay the Department an administrative fee equal to twenty-five percent (25%) of the payment to be made to Garabedian. Thus, Japonica owes an administrative fee to the Department in the amount of $2,423.10. See § 28-14-19 ("[t]he employer shall also pay the director an administrative fee equal to twenty-five percent (25%) of any payment made directly to the employee . . . pursuant to this section.")
 Interest and Attorney Fees
Rhode Island General Laws 1956 § 9-21-8 provides that "[e]very judgment for money shall draw interest at the rate of twelve percent (12%) per annum to the time of its discharge." Section9-21-8. The right to receive interest on judgments did not exist at common law; therefore, the Court "`will strictly construe any statute that awards interest on judgments so as not to extend unduly the changes enacted by the Legislature.'" DiLuglio v.Providence Auto Body, Inc., 755 A.2d 757, 775 (R.I. 2000) (citing Clark-Fitzpatrick, Inc./Franki Foundation Co. v. Gill,652 A.2d 440, 451 (R.I. 1994) (quoting Gott v. Norberg,417 A.2d 1352, 1357 (R.I. 1980)). Citing to § 9-21-8, "Interest on Judgment for Money," Garabedian asserts that if he prevails in this appeal, the Court should award 12% interest on the entire award dating back to August of 1998, the time period when Japonica was required to pay him pursuant to the Payment of Wages Statute, § 28-14-4. Japonica failed to respond to Garabedian's claim of entitlement to interest.
The Rhode Island Supreme Court has held that "[n]o judgment of the superior court may draw interest as provided for in G.L. 1956, § 9-21-8 . . . until it becomes final, for only then is the party in whose favor the judgment lies considered to have his rights thereunder perfected and confirmed; only then can full execution be obtained thereon." Atlantic Refining Co. v.Director of Public Works for the State of Rhode Island,104 R.I. 436, 441, 244 A.2d 853, 856 (1968). In the present case, Garabedian received an award from an administrative agency, not a judgment in the Superior Court; therefore, he is not entitled to interest pursuant to § 9-21-8. See Gott v. Norberg,417 A.2d 1352, 1357 n. 6 (R.I. 1980) ("administrative appeals are not civil actions within the meaning of the Rules of Civil Procedure.") (citing Notre Dame Cemetery v. Rhode Island StateLabor Relations Board, 118 R.I. 336, 373 A.2d 1194 (1977)); Inre Estate of Cantore, 814 A.2d 331, 335 (R.I. 2003) (trial justice properly refused to award prejudgment interest under §9-21-10 because an action in the Probate Court for an accounting "is an action for reimbursement, which is not the equivalent of a civil action for pecuniary damages"); Bonofiglio v. CommercialUnion Ins. Co., 411 Mass. 31, 37 (Mass. 1991) ("term `judgment' has acquired a peculiar meaning in law; it is founded on a decision by a court, not on an award by an arbitrator").
Garabedian also seeks an award of attorney fees pursuant to the State Equal Access to Justice Act. See G.L. 1956 § 42-92-1 et. seq. He argues that there was no "substantial justification" for the Department's decision. Accordingly, he requests the opportunity to submit a motion for attorney fees and litigation expenses. Japonica has not provided a response to Garabedian's request to pursue attorney's fees.
The Equal Access to Justice Act (EAJA) was intended to mitigate the burden of arbitrary and capricious decisions by administrative agencies and to encourage individuals to appeal such decisions. See §§ 42-92-1 through 42-92-8; Taft v. Pare,536 A.2d 888, 892 (R.I. 1988). An award of fees under the EAJA, however, will not be granted if the agency was substantially justified in its decision. Krikorian v. D.H.S., 606 A.2d 671, 675 (R.I. 1993). Pursuant to the EAJA, an agency's decision is substantially justified if it has a "reasonable basis in law and fact." Section 42-92-2(7). Our Supreme Court has held that an agency's decision is substantially justified if it is "`clearly reasonable, well founded in law and fact, solid though not necessarily correct.'" Krikorian, 606 A.2d at 675 (citing Taftv. Pare, 536 A.2d at 893).
In the case at bar, the Department's finding that Garabedian is entitled to recover arrearage wages and accrued vacation pay was not clearly erroneous or affected by error of law; however, the Department erred in determining the value of the award. The Department's decision was, therefore, "solid though not necessarily correct." Id. Thus, the decision issued by the Department was substantially justified and not unjust. Accordingly, Garabedian is not entitled to attorney fees or litigation costs under the EAJA.
 CONCLUSION
After a review of the entire record, this Court finds that the Department's decision that Japonica owes Garabedian vacation pay and ten days of arrearage pay is supported by reliable, probative, and substantial evidence in the record, is not in excess of the authority granted to it by statute or ordinance, and is not affected by error of law. The decision, however, must be MODIFIED because the Department's determination of the amount of the award was not supported by reliable, probative, and substantial evidence in the record. As discussed in detail herein, Japonica owes Garabedian a total of $9,692.38, which represents $5,538.50 for arrearage wages and $4,153.88 for vacation wages. Since the Payment of Wages Act requires that Japonica pay an assessment of 25% of any award, the assessment against Japonica must be increased to $2,423.10. Accordingly, the decision of the Board is affirmed in part and modified in part. The Court orders that standard deductions are to be made from the amount due to Garabedian. Additionally, all amounts must be paid within 30 days of notification of this decision. Counsel shall submit the appropriate judgment for entry.
[1] The certification of service of the decision indicates that the Department of Labor and Training mailed the decision to Attorney S. Michael Levin and Attorney Lincoln D. Almond on February 18, 2000. There is no record evidence demonstrating that the Department ever mailed its decision to Garabedian. Garabedian contends that on February 28, 2000, he called the Department to inquire as to whether a final decision had issued. He avers that on February 28, 2000, he received a copy of the decision by facsimile. Garabedian's appeal to this Court was filed within thirty days of the date he alleges he received the facsimile. Neither the Department nor Japonica has presented contrary evidence of service of the decision; therefore, Garabedian's petition is considered timely. See § 42-35-15 ("proceedings for review are instituted by filing a complaint in Superior Court . . . within 30 days after mailing notice of the final decision of the agency. . . .")
[2] A yearly salary of $144,000, divided by 52, yields a weekly salary of $2,769.23. A weekly salary of $2,769.23, divided by 5, yields a daily salary rate of $553.85. The daily rate, multiplied by ten, amounts to an award of $5,538.50 for the ten arrearage days.
[3] The Court rejects Garabedian's assertion that he was entitled to continue to accrue 1.25 vacation day per month throughout his employment. Rhode Island law does not require an employer to provide paid vacation benefits; therefore, Japonica was certainly within its rights to revise Garabedian's vacation accrual rate to account for his reduced schedule. See Hirsch and Farrrel Labor and Employment in Rhode Island § 2-(2)(i) (2003) ("no statute requires employers to provide paid vacation benefits to employees").
[4] Japonica did not communicate to Garabedian its decision to eliminate his accrual rate.
[5] The daily salary rate of $553.85 multiplied by 7.5 amounts to $4,153.88.
[6] At page 102 of the hearing transcript, Levin said: "I was raising with him: Did it seem irrational for him to be asserting a claim of vacation?"
[7] Additionally, the DOL Opinion Letters, cited by Japonica, are distinguishable from the facts presented here because the DOL Opinion Letters do not address the issue of out-of office days imposed by an employer. The Department, therefore, did not err in finding the DOL Opinion Letters to be inapposite.